1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT FOR THE

7                    EASTERN DISTRICT OF CALIFORNIA

8

9  LARRY BONDS, et al.,          )      No. CV-F-07-1600 OWW/DLB
                                 )
10                               )      MEMORANDUM DECISION DENYING
                                 )      PLAINTIFFS' MOTION TO REMAND
11                  Plaintiff,   )      (Doc. 18) AND DENYING IN
                                 )      PART AND GRANTING IN PART
12           vs.                 )      DEFENDANT'S MOTION TO
                                 )      DISMISS AND TO STRIKE (Docs.
13                               )      11 & 14)
   NICOLETTI OIL INC., et al.,   )
14                               )
                                 )
15                  Defendant.   )
                                 )
16 _____)

17      Before the court are Plaintiffs' motion to remand this

18 action to the Merced County Superior Court and Defendants' motion

19 to dismiss the Amended Complaint pursuant to Rule 12(b)(6),

20 Federal Rules of Civil Procedure, for failure to state a claim

21 and to strike pursuant to Rule 12(f), Federal Rules of Civil

22 Procedure.

23      A.   BACKGROUND.

24      On October 2, 2007, Plaintiffs Larry Bonds, Gayle Bonds,

25 Jesus Aguilar, Joe Anderson, Rose Anderson, Jim Ballanger, Jeanie

26 Ballanger, Charles Bates, Loretta Bates, Pedro Bermudez,

                                 1

Hortencia Bermudez, Linda Butler, Gloria Cardenas, Thomas M.
Climer, David Darnell, Felix Esquivel, Delia Esquivel, Pablo
Martinez, Ezequivel Ortega, Joe Ortega, Hope Ortega, Bobby
Parson, and Jeff Sullivan filed an Amended Complaint for Damages,
Declaratory Relief, and Equitable Indemnity (Amended Complaint)
in the Merced County Superior Court.   Defendants are Nicoletti
Oil Inc. and Does 1-100.

The Amended Complaint alleges that Plaintiffs are residents
or landowners in the City of Dos Palos whose homes are located on
the north side of Blossom Street and north of Defendant's bulk
fuel storage and fueling facility.   In the section of the Amended
Complaint captioned "Common Facts", it is alleged:

> 22.   Plaintiffs' properties and the 'storage
> facility' of 'Defendants', and each of them,
> are separated on the South by Blossom Street.
> A small road bisects the neighborhood East to
> west [sic].   'Defendants' underground and
> aboveground storage tanks and supply lines
> contain gasoline and other petroleum
> hydrocarbons.   Said fuel contains benzene,
> toluene, methyl tertiary-butyl ether (MTBE)
> and other substances known in the state of
> California to cause cancer and birth defects.
> The 'storage facility' is between 50 and 175
> feet from Plaintiffs' yards and homes.   The
> ground water in the area is very shallow
> running between 2.5 and 7 feet below the
> ground.   The groundwater is observed to move
> North and Northwest, approximating the flow
> of the San Joaquin River.
>
> 23.   At all times mentioned in this
> complaint, 'Defendants', and each of them
> have occupied, used, and maintained their
> premises in a manner such that gasoline,
> diesel fuel, aviation fuel, other petroleum
> hydrocarbons, and/or benzene leaked from
> underground and aboveground storage tanks and
> supply lines.   Leaks from the storage tanks

on defendants' property have migrated into and contaminated the soil and groundwater on plaintiffs' property.

24.   Through its own testing, 'Defendants' knew by at least 1988 of the presence of petroleum hydrocarbons in subsurface soil and groundwater.  The 'storage facility' suffered leaks that started to migrate into the surrounding soil and groundwater. 'Defendants' conducted tests on their own premises in 1988 and again in 1993.  The series of tests showed high levels of petroleum hydrocarbons containing benzene, xylenes, toluene, tetryl ethyl lead and other harmful and carcinogenic compounds.  In 1994 'Defendants' installed monitoring wells off their property on Blossom Street, North of the facility.  In 1995, petroleum hydrocarbon concentrations were seen to increase.  Later, 'floating product' was observed in the wells North of the 'Defendants' property. 'Defendants' made no effort to determine the extent of the spill despite continued high readings of their own monitoring tests.  In 2002, 'Defendants' tests showed the presence of MTBE at levels of 1,200 micrograms per liter in the soil bore tests and monitoring well samples.  'Defendants' results showed the presence of benzene at 25,000 micrograms per liter of water, and ethyl benzene at 7,4000 micrograms per liter of water.  Both compounds are toxic and are listed as carcinogens in the State of California. 'Defendants' did not notify the surrounding residences and businesses of the presence of high levels of petroleum hydrocarbons in areas outside of the 'Defendants' properties. Neither did 'Defendants' attempt to test any area beyond those monitoring wells installed in 1993 despite having knowledge of the presence of high levels of petroleum hydrocarbons in the monitoring wells installed North of 'Defendants' property and near 'Plaintiffs' (and each of them) property.

25.  On April 8, 2004, the California Regional Water Quality Control Board issued a letter (attached hereto as Exhibit A) notifying the owners of the properties North

3

of 'Defendants' facility that contamination 'may have migrated beneath plaintiffs' properties.'

26.  In November of 2004, 'Defendants' began to install the first nested wells on all of the herein named plaintiffs' properties, and monitoring of these wells began on December 22, 2004.  Plaintiffs therefore had no notice that petroleum hydrocarbons existed on and under their property until December 22, 2004.

27.  'Defendants' completed construction of a remediation system under order from the California Regional Quality Control Board [sic] and began operation of said system on or about December 22, 2005.  This method was /is the least aggressive remediation solution from which 'Defendants' could choose.

28.  'Defendants', and each of them, in conjunction with previous 'storage facility' owner Exxon/Mobil Corporation, began operation of a Groundwater Pump & Treat (GWP&T) system, as well as a Soil Vapor Extraction (SVE) method.  This method of removal will take more than a decade to remove the contaminants, if it is successful.

29.  The plaintiffs and each of them have sought to resolve this matter informally and the parties executed a statute tolling agreements [sic] effective April 8, 2005 and running through April 8, 2007 (See tolling agreement attached as Exhibit B).  The parties agreed to extend that statute tolling agreement until October 8, 2007 (See extended tolling agreement attached as Exhibit C).  The agreement required that if any party was to opt out of the tolling agreement, that party was to give 60 days notice, said notice to be mailed certified, return receipt requested.

30.  Following the failure of the parties to reach a resolution, plaintiffs sent proper notice of their intent to terminate the statute tolling agreement.  (attached [sic] hereto as Exhibit D).

31.  The parties executed a one week

4

extension of the tolling agreement on August 30, 2007 in an effort to reach a settlement agreement before the final expiration of the agreement (See letter attached as Exhibit E). Said settlement agreement attempt failed. The tolling agreement therefore tolled the running of any statutes from April 8, 2005 until September 12, 2007.

32.   As a result of the 'Defendants' acts and/or omissions, plaintiffs and each of them have suffered damages including, but not limited to, an interference with the use of their residential property, a diminution in the property's value, and other substantial costs and expenses.   Plaintiffs and each of them are informed and believe and based thereon allege that they and each of them individually, have suffered damages in excess of $25,000 in diminution of their property value as a result of the presence of the contaminants of benzene, ethyl benzene, toluene, tetryl ethyl lead and MTBE on their property.

33.   As a result of the defendants' acts or omissions, plaintiffs, and each of them, have suffered physical damage to their respective property as a result of contamination from the petroleum hydrocarbons, including contamination from toluene, benzene, tetryl ethyl lead and ethyl benzene.   Such contamination is harmful to the surface, subsurface, groundwater and structures on the lots, in that the presence of such contaminants makes the property less suitable for habitation, because of the build up of dangerous pollutants in the soil, air and water, and the build up of potentially explosive gases in the confined spaces of the structures on the property.

34.   Since plaintiffs and each of them purchased their respective properties, the values of surrounding properties in the area have increased.   Were it not for the presence of contaminants, plaintiffs' properties would have increased in fair market value. Plaintiffs and each of them have incurred or will incur other expenses in an amount to be determined in addition to those alleged

5

above, including, without limitation, closing costs, title insurance, casualty and liability insurance, principal and interest on obligations outstanding, taxes, fees for engineers and consultants and moving expenses.  Plaintiffs and each of them continue to incur expenses in an amount unknown to said plaintiffs at this time. Plaintiffs and each of them will pray leave to court to amend this complaint to insert the full amount of these expenses when they are ascertained.  All of these expenses were necessary, and all were made in good faith reliance that the property was free from contamination.

35.  As a further legal cause of the 'Defendants' acts and/or omissions, plaintiffs and each of them have incurred great mental and nervous suffering and pain due to nervousness, fright, worry and anxiety about the certain potential health and financial damages caused by 'Defendants' acts and omissions.  As a result of such injuries, plaintiffs have suffered general damages in an amount to be proven, but not less than $25,000 each.

36.  In engaging in the acts set forth above, 'Defendants', and each of them, were guilty of malice, fraud, and oppression as defined in California Civil Code Section 3294. Plaintiffs and each of them should recover in addition to actual damages, damages to make an example of and punish defendants, in an amount to be determined.

The Amended Complaint alleges nine causes of action:

1.  First Cause of Action for negligence;

2.  Second Cause of Action for damages for private nuisance;

3.  Third Cause of Action for damage for trespass;

4.  Fourth Cause of Action for damage for fraud-concealment;

5.  Fifth Cause of Action for intentional

infliction of emotional distress;

6.   Sixth Cause of Action for negligent infliction of emotional distress; fear of cancer;

7.   Seventh Cause of Action for unlawful business practice in violation of California Business & Professions Code §§ 17200 *et seq.*;

8.   Eighth Cause of Action for unlawful business practice in violation of California Business & Professions Code §§ 17200 *et seq.*, based on California Health & Safety Code §§ 25249.6 *et seq.*;

9.   Ninth Cause of Action for declaratory relief and equitable indemnity.

Defendants removed the action to this Court.  The Notice of Removal states as grounds:

7.   Congress has the power to control the jurisdiction of the lower federal courts, whether by expansion or contraction. *McDowell v. United States*, 159 U.S. 596, 598-99 (1895).

8.   Section 1503 of the Energy Policy Act of 2005 provides:

Claims and legal actions filed after the date of enactment of this Act related to allegations involving actual or threatened contamination of methyl tertiary butyl ether (MTBE) may be removed to the appropriate United States District Court.  *See* 119 Stat. 594, 1076 (2005)(*reprinted in* 42 U.S.C. § 7545, 2005 Amendments, 'Claims Filed After Enactment').

9.   The Energy Policy Act was signed into law by the President on August 8, 2005, its effective date, and the instant action was filed after that date.  *See* Energy Policy Act of 2005, 119 Stat. 594, 1076 (2005)(*reprinted in* 42 U.S.C. § 7545, 2005 Amendments, 'Claims Filed After Enactment').

7

**10.  This action is 'related to allegations involving actual or threatened contamination' by MTBE.**

**11.  Section 1503 of the Energy Policy Act of 2005 provides a basis for removal of this action that is independent of any federal question and/or the general removal statute, 28 U.S.C. § 1441(a).**

**12.  This case is removable because the Complaint [sic] is 'related to allegations involving actual or threatened contamination of' MTBE.  Plaintiffs' Complaint [sic] alleges that Defendant is liable to the Plaintiffs based upon Defendant's alleged contamination of soil and groundwater with MTBE, and that Defendant used MTBE as a petroleum fuel constituent.**

**13.  For example, Plaintiffs allege that 'Defendants' underground and aboveground storage tanks and supply lines contain gasoline and other petroleum hydrocarbons. Said fuel contains benzene, toluene, methyl tertiary-butyl ether (MTBE) and other substances known in the state of California to cause cancer and birth defects.'  *See* Complaint [sic] at 6:20-22, ¶ 22.  Plaintiffs also claim that 'In 2002, "Defendants' [sic] tests showed the presence of MTBE at levels of 1,200 micrograms per liter in the soil bore tests and monitoring well samples.'  *See* Complaint [sic] at 7:13-14, ¶ 24.  The Complaint further alleges that Plaintiffs have each 'suffered damages in excess of $25,000 in diminution of their property values as a result of the presence of the contaminants of benzene, ethyl benzene, toluene, tetryl ethyl lead and MTBE on their property.'  *See* Complaint [sic] at 9:1-3, ¶ 32.  Plaintiffs' Complaint [sic] also alleges that Defendant's 'conduct includes releasing into the environment harmful substances in the form of petroleum hydrocarbons containing Proposition 65 listed chemicals, including benzene, tetryl ethyl lead (TEL), methyl tertiary-butyl ether (MTBE), toluene, and ethyl benzene without a clear and reasonable warning or notice to persons potentially or actually affected ...'  *See* Complaint [sic] at**

8

18:25 to 19:2, ¶ 89.

14. Plaintiffs' Complaint [sic] contains multiple other allegations of 'contamination,' contaminants,' 'groundwater' contamination and/or 'soil' contamination caused by 'gasoline' or 'fuel' or other 'petroleum' releases or leaks. *See generally* Complaint [sic] at ¶¶ 33, 34, 39-40, 43-44, 49-50, 54-55, 58, 60-62, 71, and 98-100. Plaintiffs' Complaint alleges that such products contain MTBE. *See* Complaint [sic] at 6:20-22, ¶ 22. This action is, therefore, 'related to allegations involving actual or threatened contamination' by MTBE.

B.   <u>PLAINTIFFS' MOTION TO REMAND</u>.

Plaintiffs move to remand this action to the Merced County Superior Court. The primary basis for the motion to remand is Plaintiffs' contention that they do not depend on any claim of MTBE contamination to maintain any of their causes of action. Plaintiffs assert that the Amended Complaint does not allege that Plaintiffs have suffered harm, actual or threatened, from MTBE because Plaintiffs have not asserted a claim for contaminated drinking water. Plaintiffs assert that "MTBE is only harmful, if at all, when present in drinking water supplies." Plaintiffs refer to the April 8, 2004 letter from Warren W. Gross, Engineering Geologist, California Regional Water Quality Control Board, Central Valley Region, attached to the Amended Complaint as Exhibit A and to Plaintiffs' Request for Judicial Notice as Exhibit 1, which letter states in pertinent part:

We have identified you as the owner and/or resident of property to the north of the bulk petroleum facility at 2801 Blossom St. ... The release of gasoline and diesel fuel from the Property in past years has impacted

9

> groundwater which now may have migrated
> beneath your property.  That groundwater may
> contain dissolved constituents of gasoline
> and diesel fuel and a layer of
> gasoline/diesel fuel may be floating on top
> of the groundwater.  Gasoline vapors and
> gasoline and diesel fuel contamination may
> also be present in soil above the
> groundwater.  These conditions have been
> observed in the vicinity of your property but
> their full extent has not yet been
> determined.
>
> As you are supplied with city water, the
> primary potential health hazard (if any) is
> the possibility of gasoline vapors in indoor
> air and direct contact with hydrocarbons in
> deep excavations on your property.

Plaintiffs also refer to "cleanup and abatement order No. R5-200-0057 issued by California Regional Quality Control Board, Central Valley Region, Page 3."  Plaintiffs assert that a copy of this order is attached as Exhibit 2.  No such exhibit is attached. Exhibit 2 to Plaintiff's Request for Judicial Notice is a copy of "Achieving Clean Air *and* Clean Water: The Report of the Blue Ribbon Panel on Oxygenates in Gasoline" dated September 15, 1999. In any event, Plaintiffs contend:

> During indoor testing by both California
> E.P.A. and (CRWQCB) [sic] in 2005 on samples
> that were collected, focused on levels of
> vaporized Benzene and Tetryl Ethyl Lead (TEL)
> ... No testing was performed to determine if
> MTBE was present in air samples.  Based on
> their earlier assurances to residents,
> CRWQCB's only concern regarding the
> residents' health was, in fact, airborne
> pollutants in enclosed spaces, i.e., their
> homes.
>
> The existence of MTBE in the ground water
> around and under plaintiffs' residences does
> not create an independent cause of action.
> Plaintiffs mention MTBE primarily as a 'time

marker' only to help a trier of fact
establish when the leak may have begun, and
how long it continued.  Contrary to
defendants' inference, plaintiffs' complaint
does not rely upon the existence of MTBE in
their soil or groundwater.  In fact, it is
very clear from the complaint that
plaintiffs' chief concerns were the presence
of toluene, benzene, tetryl ethyl lead and
ethyl benzene, as it relates to their
physical health.

Plaintiffs are making no claim that their
drinking water was affected, and because
plaintiffs have no health concerns about
MTBE, they did not bring an action based on
contaminated drinking water.  There is no
federal <u>claim</u>.  Plaintiffs are willing to
amend their complaint to eliminate any
reference to MTBE from the complaint, and
will stipulate that MTBE does not pose a
threat as a contaminant in, around or under
plaintiffs' property, as it has not affected
the drinking water in the area.

Plaintiffs contend that they brought this action:

[B]ecause their properties had been damaged
by petroleum hydrocarbons.  Specifically, the
plaintiffs [sic] concerns were contamination
of their residences by the spread of the
petroleum hydrocarbons through the surface
groundwater and onto their land.  There has
never been a concern that drinking water
supplies would be affected by defendants
[sic] facility leaking MTBE, and thus
plaintiffs made no such claim.

Plaintiffs assert that "the entire basis of [their] claims has

been one based on the harm, and potential harm, caused by

airborne volatile organic compounds as a result of defendants

[sic] ... acts".

As Defendant notes, Pub. L. 109-58, Title XV, § 1503

provides:

Claims and legal actions filed after the date

11

1
2
3

> of enactment of this Act [August 8, 2005]
> related to allegations involving the actual
> or threatened contamination of methyl
> tertiary butyl ether (MTBE) may be removed to
> the appropriate United States district court.

4 Although Plaintiffs attempt to downplay the allegations in the

5 Amended Complaint of actual or threatened contamination of the

6 properties by MTBE, among other contaminants, Paragraph 32 of the

7 Amended Complaint alleges that Plaintiffs have suffered

8 "diminution of their property value as a result of the presence

9 of the contaminants of benzene, ethyl benzene, toluene, tetryl

10 ethyl lead and *MTBE* on their property." [Emphasis added].

11      Plaintiffs argue that Defendant's construction of Section

12 1503 is overbroad:

13
14
15
16
17
18
19
20
21

> Plaintiffs would not actually have had to
> mention MTBE in the complaint at all.
> Defendant interprets 'actual or threatened
> contamination' to mean that plaintiff does
> not have to bring an action for 'actual or
> threatened contamination,' only that MTBE be
> present.  Such a literal and simplistic
> interpretation could allow Defendant to
> remove any case whether the 'threat of
> contamination' exists without regard to the
> relevance of MTBE in the case.  The Congress
> did not create a new body of law to regulate
> all fuel leaks where MTBE is present.
> Defendant wants the independent grant of
> jurisdiction without any other basis, and
> without regard to whether plaintiffs'
> substantive complaint relies on, or asks for
> relief as result of, MTBE contamination.

22

23      Plaintiffs' argument is unpersuasive given the allegations

24 of the Amended Complaint.  The Court need not address or resolve

25 Plaintiffs' contention because, clearly, this is not a situation

26 where removal is attempted based solely on the defense position

that MTBE must be present in the contaminated area.

Plaintiffs' assertion that remand will be proper once they delete all references to MTBE from the Amended Complaint to defeat federal jurisdiction is unsupported by citation of authority.  As Defendant notes, Ninth Circuit law is to the contrary.  *See Sparta Surgical Corp. v. National Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir.1998):

> Finally, Sparta directs our attention to an
> amended complaint it filed after removal in
> which most references to exchange rule
> violations were deleted.  This is of no
> moment to us, however, for jurisdiction must
> be analyzed on the basis of the pleadings
> filed at the time of removal without
> reference to subsequent amendments ...
> Because of this rule, a plaintiff may not
> compel remand by amending a complaint to
> eliminate the federal question upon which
> removal was based.

Plaintiff further argues that removal is not required because of the word "may" in Section 1503.  This argument is of no moment because Defendant, who has the legal right to remove an action in which federal jurisdiction exists, elected to do so.

While Plaintiffs may be correct that their primary concern is with contaminants other that MTBE, there is no question that Paragraph 32 alleges that Plaintiffs have been damaged because of the presence of MTBE.  In addition, there are, as Defendant points out in the Notice of Removal, numerous references to contamination by MTBE in the Amended Complaint.  While the burden of establishing federal jurisdiction falls on the party invoking removal under 28 U.S.C. § 1441, *Harris v. Provident Life and Acc.*

13

*Ins. Co.*, 26 F.3d 930, 932 (9th Cir.1994), Defendant has sustained this burden simply by referring to the allegations of the Amended Complaint.   Plaintiffs' protestations that they did not mean it are simply not persuasive in light of the allegations.

The motion to remand is DENIED.

C.   <u>DEFENDANT'S MOTION TO DISMISS</u>.

1.   <u>GOVERNING STANDARDS</u>.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.   *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001).   Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).   Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory.   *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984).   In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).   However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.   *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).   Immunities and other

14

affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)  When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir.1988).

## 2.  STATUTES OF LIMITATION.

Defendant argues that the Amended Complaint is barred by the applicable statutes of limitation.

The statute of limitations for tort causes of action arising from injury to real property is three years.  California Code of Civil Procedure § 338(b).  The statute of limitations for violation of California Business & Professions Code §§ 17200 *et seq*. is four years.  California Business & Professions Code § 17208.  The statute of limitations for infliction of emotional distress is two years.  California Code of Civil Procedure § 335.1.

Defendant refers to the allegations at Paragraphs 24 and 43 of the Amended Complaint:

> 24.  Through its own testing, 'Defendants' knew by at least 1988 of the presence of petroleum hydrocarbons in subsurface soil and groundwater.  The 'storage facility' suffered leaks that started to migrate into the

surrounding soil and groundwater.
'Defendants' conducted tests on their own
premises in 1988 and again in 1993.  The
series of tests showed high levels of
petroleum hydrocarbons containing benzene,
xylenes, toluene, tetryl ethyl lead and other
harmful and carcinogenic compounds.  In 1994
'Defendants' installed monitoring wells off
their property on Blossom Street, North of
the facility.  In 1995, petroleum hydrocarbon
concentrations were seen to increase.  Later,
'floating product' was observed in the wells
North of the 'Defendants' property.
'Defendants' made no effort to determine the
extent of the spill despite continued high
readings of their own monitoring tests.  In
2002, 'Defendants' tests showed the presence
of MTBE at levels of 1,200 micrograms per
liter in the soil bore tests and monitoring
well samples.  'Defendants' results showed
the presence of benzene at 25,000 micrograms
per liter of water, and ethyl benzene at
7,4000 micrograms per liter of water.  Both
compounds are toxic and are listed as
carcinogens in the State of California.
'Defendants' did not notify the surrounding
residences and businesses of the presence of
high levels of petroleum hydrocarbons in
areas outside of the 'Defendants' properties.
Neither did 'Defendants' attempt to test any
area beyond those monitoring wells installed
in 1993 despite having knowledge of the
presence of high levels of petroleum
hydrocarbons in the monitoring wells
installed North of 'Defendants' property and
near 'Plaintiffs' (and each of them)
property.

...

43.  At various times beginning in at least
1988 and continuing through the present date,
'Defendants' caused and/or permitted the
release of contaminants and failed to clean
up the contamination, or otherwise remedy the
situation so that the contaminants migrated
under properties owned by plaintiffs and into
subadjacent groundwater, and in such a manner
as to be injurious to plaintiffs' health and
property, to obstruct plaintiffs' and each of
their free use of their properties, yards,

16

1
2
3
> homes and outbuildings, to obstruct
> plaintiffs' and each of their quiet enjoyment
> of life and property, thereby constituting a
> nuisance under California Code of Civil
> Procedure Sections 3479-3503.

4  Relying on these allegations, Defendant argues that the Amended

5  Complaint facially establishes that the statutes of limitations

6  on the various causes of action ran prior to the earliest

7  effective date, April 8, 2005, that Plaintiffs allege for the

8  tolling agreements between the parties.

9       Plaintiffs respond that the First Cause of Action for

10  negligence, the Second Cause of Action for damages for private

11  nuisance and the Third Cause of Action for trespass are not time-

12  barred under the "continuing wrong" theory.

13       Defendant argues that the "continuing wrong" theory does not

14  apply to the tort of negligence.  Defendant cites *West Coast Home*

15  *Builders, Inc. v. Aventis Cropscience USA Inc.,* 2006 WL 1867717

16  (N.D.Cal.2006):

17
18
19
20
21
22
23
24
25
26
> The Court concludes that plaintiff's claims
> for negligence, negligence per se,
> ultrahazardous activity, and state law
> declaratory relief are barred by the statute
> of limitations.  *CAMSI IV v. Hunter*
> *Technology Corporation*, 230 Cal.App.3d 1525
> (1991), is instructive.  In *CAMSI IV*, a
> plaintiff landowner sued a company that had
> previously owned the land, alleging that the
> former property owner had discharged volatile
> organic chemicals onto the property.  The
> plaintiff alleged claims for negligence,
> negligence per se, and strict
> liability/ultrahazardous activity.  *Id.* at
> 1532.  The Court of Appeal held these claims
> were time-barred because the complaint
> alleged that the former property owner,
> Hunter, had manufactured circuit boards on
> the property until 1983, and thus '[u]nder

the orthodox rule, the three-year limitation period would have commenced no later than 1983 and expired in 1986,' two years before the plaintiff filed suit. *Id.* at 1534. The court rejected the plaintiff's argument that its claims did not accrue until a regional water quality control board issued an order in 1986 requiring cleanup of the property:

> [F]rom the face of the second amended complaint, it is apparent that any harm the alleged tortfeasor, Hunter, had done to the property had been completed by no later than 1983, and that so far as the complaint reflects the physical aspects of that harm were not progressive: The contamination of the soil and groundwater, once and to the extent caused by Hunter, apparently remained constant.

*Id.* at 1535.

Defendant also cites *Mangini v. Aerojet-General Corp.,* 230 Cal.App.3d 1125 (1991). In *Mangini*, the Court allowed the plaintiff to amend to allege a continuing nuisance and a continuing trespass but ruled that the causes of action for negligence, negligence per se, and strict liability were time-barred.

Defendant's authority that there cannot be continuing negligence is not persuasive. *Mangini* does not discuss or hold that such a theory is not possible. The facts of the Central District case and the California decision cited by it are different from those alleged in the Amended Complaint. From the allegations of the Amended Complaint, the contamination of plaintiffs' properties is continuing to this day.

Defendant concedes in its reply brief that nuisance and

18

trespass claims can invoke a continuing statute of limitations if appropriate allegations are made.  Defendant argues, however, that the Amended Complaint does not contain the required allegations.  Defendant cites *Beck Development Co. v. Southern Pacific Transportation Company,* 44 Cal.App.4th 1160, 1217 (1996), as holding that '[a] plaintiff cannot simply allege that a nuisance is continuing to avoid the bar of the statute of limitations ..." and notes that Paragraph 43 of the Amended Complaint alleges that Defendant's conduct is "[c]ontinuing to the present date."

At issue in *Beck Development Co.* was the election to treat a nuisance as permanent or continuing.  The Court of Appeal stated:

> A plaintiff cannot simply allege that a nuisance is continuing in order to avoid the bar of the statute of limitations, but must present evidence that under the circumstances the nuisance may properly be considered continuing rather than permanent ... It is only where the evidence would reasonably support either classification that the plaintiff may choose which course to pursue.

Defendant also cites *Mangini, supra*, 230 Cal.App.3d at 1146: "Plaintiff's proposed pleading therefore meets the crucial test of a continuing nuisance: that the offensive condition is abatable."

Defendant raised these contentions for the first time in the reply brief.  Because Defendant moved to dismiss all causes of action on the bar of the statute of limitations, it is improper for Defendant to raise an alternative ground for dismissal of the nuisance and trespass claims in the reply brief.  *See Northwest*

1  *Acceptance Corp. v. Lynnwood Equip.,* Inc., 841 F.2d 918, 923 (9th

2  Cir.1981); *United States v. Boyce*, 148 F.Supp.2d 1069, 1085

3  (S.D.Cal.2001).

4       Defendant's motion to dismiss the negligence, nuisance and

5  trespass causes of action for failure to sufficiently allege the

6  continuing nature of the harm is DENIED.

7       Defendant contends that all causes of action other than

8  nuisance and trespass are time-barred as established from the

9  face of the Amended Complaint.  Defendant asserts that each

10  Plaintiff is required to allege specific facts that delay the

11  accrual of these time-barred causes of action.  Defendant places

12  primary reliance on *McKelvey v. Boeing North America*, 74

13  Cal.App.4th 151 (1999).

14       In *McKelvey*, the plaintiffs argued that the allegations of

15  their complaints were sufficient to invoke the delayed discovery

16  rule to overcome the bar of the statute of limitations.  The

17  Court of Appeals disagreed:

18       The common law rule - that an action for
         personal injury or property damages accrues
19       on the date of injury - applies only as
         modified by the 'discovery rule,' which
20       provides that the accrual date of a cause of
         action is delayed until the plaintiff is
21       aware of his injury and its negligent cause.
         The plaintiff is charged with this awareness
22       as of the date he suspects or should suspect
         that his injury was caused by wrongdoing,
23       that someone has done something wrong to him.
         Accordingly, the period of limitations will
24       begin to run without regard to whether the
         plaintiff is aware of the specific facts
25       necessary to establish his claim, provided
         that he has a 'suspicion of wrongdoing,'
26       which he is charged with once he has 'notice

20

> or information of circumstances to put a
> reasonable person on inquiry.' ... A
> plaintiff whose complaint shows on its face
> that his claim would be barred without the
> benefit of the discovery rule must
> specifically plead facts to show (1) the time
> and manner of discovery *and* (2) the inability
> to have made earlier discovery despite
> reasonable diligence.  The burden is on the
> plaintiff to show diligence, and conclusory
> allegations will not withstand demurrer ....

**74 Cal.App.4th at 160.  The Court of Appeals further noted:**

> There is absolutely no authority for
> plaintiffs' fanciful contention that they had
> no duty of inquiry because they were not
> purchasers or tenants of property owned or
> managed by Boeing and thus were not in
> 'privity' with Boeing.  When it is apparent
> from the face of the complaint that, but for
> the delayed discovery rule, the action would
> be time barred, it is the plaintiff's burden
> to show diligence.  For this reason, the
> plaintiff must plead (and later prove) '*the
> facts* showing: (a) lack of knowledge; (b)
> lack of means of obtaining knowledge (in the
> exercise of reasonable diligence the facts
> could not have been discovered at an earlier
> date); (c) how and when he did actually
> discover the fraud or mistake.  Under this
> rule, constructive and presumed knowledge are
> equivalent to knowledge.  *So, when the
> plaintiff has notice of information or
> circumstances to put a reasonable person on
> inquiry, or has the opportunity to obtain
> knowledge from sources open to his
> investigation (such as public records or
> corporation books), the statute commences to
> run.*' (3 Witkin, Cal. Procedure (4th
> ed.1996) Actions, § 602, p.773, italics
> added.

**74 Cal.App.4th 160 n.11.**

In *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512-514
(2002), the Supreme Court rejected application of a heightened
pleading standard in employment discrimination cases because such

21

1  a standard conflicts with Rule 8(a)(2), Federal Rules of Civil

2  Procedure, that a complaint must include only 'a short and plain

3  statement of the claim showing that the pleader is entitled to

4  relief." The Supreme Court held:

> Such a statement must simply 'give the
> defendant fair notice of what the plaintiff's
> claim is and the grounds upon which it is
> rests.' ... This simplified notice pleading
> standard relies on liberal discovery rules
> and summary judgment motions to define
> disputed facts and issues and to dispose of
> unmeritorious claims. ... 'The provisions for
> discovery are so flexible and the provisions
> for pretrial procedure and summary judgment
> so effective, that attempted surprise in
> federal practice is aborted very easily,
> synthetic issues detected, and the gravamen
> of the dispute brought frankly into the open
> for the inspection of the court.' ....
>
> Rule 8(a)'s simplified pleading standard
> applies to all civil actions, with limited
> exceptions.  Rule 9(b), for example, provides
> for greater particularity in all averments of
> fraud or mistake.  This Court, however, has
> declined to extend such exceptions to other
> contexts.  In *Leatherman* we stated: '[T]he
> Federal Rules do address in Rule 9(b) the
> question of the need for greater
> particularity in pleading certain actions,
> but do not include among the enumerated
> actions any reference to complaints alleging
> municipal liability under § 1983. *Expressio
> unius est exclusio alterius.*' ... Just as
> Rule 9(b) makes no mention of municipal
> liability under ... § 1983 ..., neither does
> it refer to employment discrimination.  Thus,
> complaints in these cases, as in most others,
> must satisfy only the simple requirements of
> Rule 8(a).
>
> Other provisions of the Federal Rules of
> Civil Procedure are inextricably linked to
> Rule 8(a)'s simplified notice pleading
> standard.   Rule 8(e)(1) states that '[n]o
> technical forms of pleading or motions are
> required,' and Rule 8(f) provides that '[a]ll

22

pleadings shall be so construed as to do substantial justice.'  Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' ... If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of the claim ....

In *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir.1995), the Ninth Circuit, when discussing California's discovery rule, stated: "All parties agree that the burden is on Sansome to plead and prove the facts necessary to toll the limitations period once it is established that it would have otherwise commenced."  In *Adobe Lumber, Inc. v. Hellman*, 415 F.Supp.2d 1070, 1081 (E.D.Cal.2006), Judge Shubb ruled in pertinent part:

Plaintiff correctly points out that the heightened pleading standard of the discovery rule seems to conflict with the liberal notice pleading standard in Federal rule of Civil Procedure 8(a)(2).  However, the Ninth Circuit has unequivocally held that in order to rely on a defense to a statute of limitations challenge provided by state law, plaintiff must meet the pleading requirements of state law.  *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995)(recognizing that 'plaintiff must allege specific facts establishing the applicability of the discovery-rule exception' but need not 'specifically allege when the cause of action accrued'); *Gallardo v. DiCarlo*, 203 F.Supp.2d 1160, 1169 n.[1]3 (C.D.Cal.2002)(refusing to

23

> apply the discovery rule because plaintiff
> failed to plead specific facts addressing the
> time and manner of discovery and plaintiff's
> diligence).

It is unclear to what extent *California Sansome Co.* remains good law - it was decided years before *Swierkiewicz*.  The district court opinions applying *California Sansome* do not mention *Swierkiewicz*.  *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1270 n.3 (9th Cir.2006), notes:

> Pleading requirements differ between federal
> law and California law.  California law
> requires that a complaint contain 'a
> statement of the facts constituting the cause
> of action, in ordinary and concise language.'
> Cal.Civ.Proc.Code § 425.10(a)(1) ... On the
> other hand, '[t]he Federal Rules do not use
> the term "cause of action," and their
> emphasis is on the factual rather than the
> "legal right" aspects of the cause of
> action.'  4 B.E. Witkin, California Procedure
> § 25 (4th ed.2006).  The Federal Rules do not
> require that the complaint state all of the
> facts constituting a cause of action:

> > Conspicuously absent from Federal
> > Rule 8(a)(2) is the requirement
> > found in the codes that the pleader
> > set forth the 'facts' constituting
> > a 'cause of action.'  The
> > substitution of 'claim showing that
> > the pleader is entitled to relief'
> > for the code formulation of the
> > 'facts' constituting a 'cause of
> > action' was intended to avoid the
> > distinctions drawn under the codes
> > ... and eliminate the unfortunate
> > rigidity and confusion surrounding
> > the words 'cause of action.'

> 5 Charles Alan Wright & Arthur R. Miller,
> Federal Practice and Procedure § 1216 (3rd
> ed.2006).  Under federal law, the primary aim
> of the pleading requirements is to give fair
> notice to the other party.  Unlike California
> law, '[a] reading of *Garcia, Conley*, and

24

> *Swierkiewicz*, **and a host of other cases ...**
> **suggests that the complaint, and other**
> **relief-claiming pleadings need not state with**
> **precision all of the elements that are**
> **necessary to give rise to a legal basis for**
> **recovery as long as fair notice of the nature**
> **of the action is provided to the opposing**
> **party.'** *Id.* **(citing** *Swierkiewicz v. Sorema*
> *N.A.,* **534 U.S. 506, 510 ... (2002);** *Conley v.*
> *Gibson*, **355 U.S. 41, 45-46 ... (1957);** *Garcia*
> *v. Hilton Hotels Int'l,* **97 F.Supp. 5, 8**
> **(D.P.R.1951).**

**Despite this tension between notice pleading under Rule 8 and code pleading under California law, the applicable law places the burden on Plaintiffs to plead facts to justify delayed discovery.  Defendant argues that the Amended Complaint does not do this.  Defendant refers to documents attached to its Request for Judicial Notice which are documents generated by the local Regional Water Quality Control Board and other governmental entities dating back to the late 1980s and continuing every year to the present.  Defendant asserts:**

> **The Regional Water Quality Control Board's**
> **files were and are available to the public**
> **under California's version of the Freedom of**
> **Information Act, known as the California**
> **Public Records Act.  Thus, Plaintiffs had the**
> **means of obtaining the knowledge that the**
> **events triggering the running of the statute**
> **of limitations period had occurred.**

**Defendant further argues that the Amended Complaint fails with regard to each Plaintiff to allege facts showing that the exercise of reasonable diligence would not have discovered the operative facts at an earlier date:**

> **[T]hey have fatally pled allegations showing**
> **that they were on notice of Defendants'**
> **investigation of environmental conditions in**

25

the street in front of - and less than 175 feet from - their residences.  Specifically, Plaintiffs allege that Defendant 'installed monitoring wells ... on Blossom Street, North of the facility' (Complaint at 24, p.7:10-11), that these monitoring wells were installed 'near Plaintiffs (and each of them) property" (*Id.* at 24, p.7:21-22), that 'Plaintiffs' homes are located on the north side of Blossom Street' (*Id.* at 1, p.2:3) and that Defendant's property 'is between 50 and 175 feet from [P]laintiffs' yards and homes (*Id.* at 22, p.6:23).  The Complaint thus establishes that the investigation of the alleged contamination was occurring less than 175 feet, and in some cases less than 50 feet, from each and every one of the Plaintiffs' properties.

Defendant also refers to public agency records submitted with the Request for Judicial Notice that in June 1993, Defendant was drilling investigatory wells in Blossom Street near Plaintiffs' homes, blocking traffic lanes in the process.  Defendant argues that, coupled with the other information alleged, "it stretches the limits of credulity for Plaintiffs to assert they were not obligated to exercise reasonable diligence to investigate further."

Plaintiffs respond by noting that in *McKelvey*, the complaints at issue alleged that "'public notices and newspaper articles were published about [Boeing's] intentional, reckless and/or negligent conduct.'"  The Court of Appeals held:

In the face of that admission, plaintiffs' conclusory assertion that they 'were and are not [*sic*] aware of the actual and potential harm caused by [Boeing's] conduct' is patently inadequate.  Without resort to the matters submitted to the court for judicial notice, the bottom line is that plaintiffs' amended (and proposed amended) complaints

26

> acknowledge the publicity surrounding
> Boeing's operation of the Rocketdyne
> facilities, yet nevertheless fail to explain
> how they managed to ignore those 'newspaper
> articles.'  Other than a general reference to
> an entire year and an ambiguous reference to
> an undated report ('the final report of the
> University of California at Los Angeles'
> Rocketdyne Worker Health Study'), they have
> not alleged *facts* about the time or manner of
> discovery; discovery despite reasonable
> diligence ... *They do not allege that they
> did not read, hear or see the articles and
> broadcasts they admit were published.*

*McKelvey*, *supra,* 74 Cal.App.4th at 161.

Plaintiffs argue that Defendant does not assert widespread publicity about its acts of contamination and contend that "[m]assive publicity ... is much different that the mere existence of documents at a Regional Water Quality Control Office."  Plaintiffs contend that they "have not expressly or impliedly alleged that they were on notice of Defendant's wrongful conduct before April 8, 2004, when the California Regional Water Quality Control Board issued a letter ... notifying the owners of the properties North of Defendant's facility that contamination 'may have migrated beneath Plaintiffs' properties.'"

With regard to Defendant's installation of monitoring wells near Plaintiffs' properties, Plaintiffs refer to the allegation at Paragraph 24 of the Amended Complaint that "'Defendants' did not notify the surrounding residences and businesses of the presence of high levels of petroleum hydrocarbons in areas outside of the 'Defendants' properties" and did not "attempt to

1  test any area beyond those monitoring wells installed in 1993

2  despite having knowledge of the presence of high levels of

3  petroleum hydrocarbons in the monitoring wells installed North of

4  'Defendants' property and near 'Plaintiffs' (and each of them)

5  property."  Plaintiffs also refer to the allegation at Paragraph

6  26:

7              In November of 2004, 'Defendants' began to
             install the first nested wells on all of the
8              herein named plaintiffs' properties, and
             monitoring of these wells began on December
9              22, 2004.  Plaintiffs therefore had no notice
             that petroleum hydrocarbons existed on and
10             under their property until December 22, 2004.

11 Plaintiffs argue that the April 8, 2004 letter from the CWQCB

12 that "[t]he release of gasoline and diesel fuel from the property

13 in past years has impacted the ground water which now *may* have

14 migrated beneath your property ..." was the first notice that

15 Plaintiffs could reasonably have understood that there could be

16 damage to their properties.  Plaintiffs contend:

17             When one factors in the Tolling Agreement,
             each cause of action that Plaintiffs have
18             asserted has been filed well within the
             applicable statute of limitations.  The
19             letter from the California Regional Water
             Quality Control Board was sent on April 8,
20             2004.  The Statute of Limitations was tolled
             by agreement of the parties from April 8,
21             2005 to September 12, 2007.  The Plaintiffs'
             Complaint was filed September 14, 2007;
22             therefore, none of Plaintiffs' causes of
             action are barred by the Statute of
23             Limitations.

24      Defendant responds by noting that constructive notice

25 constitutes notice: "Plaintiffs concede, in addition to the

26 environmental investigation and remediation work that occurred

literally in front of their front doors, there were public
records available from which Plaintiffs could have known about
the alleged contamination as early as the late 1980s/early
1990s."

There are numerous factual issues involved in this aspect of
the motion to dismiss.  For example, the testing and drilling on
Defendant's facility and the work done on Blossom Street - were
these actions publicized as an environmental investigation/clean
up?  When did it become known to Defendant or the Water Board
that the contaminated ground had possibly migrated under
Plaintiffs' properties?  Defendant's property could have been
contaminated years before Plaintiffs' properties.  A review of
the documents submitted with Defendant's Request for Judicial
Notice indicates that, other than the April 8, 2004 letter
previously quoted, all of the documents pertain to contamination
at the site, i.e., Defendant's facility.  Therefore, when each
Plaintiff discovered their respective injury raises questions of
fact.  Plaintiffs allege they did not know the purpose of the
monitoring wells; what test results were achieved; or that they
had any duty to inquire about the wells unless and until
Defendant publically disclosed the purpose of the wells and
testing results.

Defendant's motion to dismiss based on the bar of the
statute of limitations and the failure to plead the discovery
rule as required by California law is GRANTED WITH LEAVE TO AMEND

     3.   <u>FOURTH CAUSE OF ACTION FOR FRAUD-CONCEALMENT</u>.

1        The Fourth Cause of Action incorporates all preceding

2   allegations and further alleges:

3            54.   At various times beginning in at least
             1988 and continuing through April 8, 2004,
4            Defendants and each of them knew of the
             presence of contaminants on said defendants'
5            property and on property north of their
             'storage facility.' [sic] Defendants ...
6            through their own monitoring discovered
             dangerous levels of hydrocarbons in the soil
7            and subadjacent ground water in wells dug on
             Blossom Street and other areas surrounding
8            said defendants' 'storage facility.'

9            55.   Despite high readings for benzene,
             toluene, xylenes and other carcinogenic
10           substances, 'Defendants' ... performed no new
             tests and made no effort to clean up the
11           contamination said defendants had discovered.
             Defendants ... further ... made no efforts to
12           contact any homeowners or persons living near
             the 'storage facility' regarding their
13           findings, until required to do so by the
             California Regional Water Quality Control
14           Board in April 2004.

15           56.   Defendants ... by their actions,
             knowingly and/or intentionally failed to
16           disclose said important fact, that was known
             only to said defendants, and said fact was
17           one that the plaintiffs ... could not have
             reasonably discovered.

18
             57.   Plaintiffs and each of them had no
19           reason to suspect that a petroleum
             hydrocarbon plume existed under or near their
20           respective properties until April 14, 2004 at
             the earliest when the first plaintiff
21           received notice from the Regional Quality
             Control Board [sic] of the potential for
22           existence of petroleum hydrocarbons under
             plaintiffs' and each of their properties.
23           Plaintiffs and each of them did not know of
             the actual existence of dangerous
24           hydrocarbons in their soil and in the
             subadjacent groundwater until monitoring
25           wells were installed in November and December
             of 2004 on plaintiffs' respective properties.

26

                            30

1
2
3
4
5
6
7
8
9

   58.  Defendants ... intended to deceive
plaintiffs and each of them by concealing the
fact that said defendants knew of the
existence of petroleum hydrocarbons located
off the 'storage facility,' that the
petroleum hydrocarbon plume migrated from
said defendants 'storage facility,' that the
said product had migrated north from the
'storage facility' on a path which a
reasonable person would believe would migrate
onto plaintiff's and each of their property,
that said defendants had discovered large
amounts of petroleum in the wells dug north
of the 'storage facility,' which would lead a
reasonable person to believe that said
contaminants had migrated onto, into and/or
under said plaintiffs' properties.

10
11
12
13
14
15

   59.  Plaintiffs ... reasonably relied on the
belief that Defendants ... were operating
their plant and/or 'storage facility' in a
safe and reasonable fashion, and that no
danger existed to plaintiffs.  Plaintiffs
also relied on the belief that said
defendants would notify said plaintiffs if
said defendants believed that petroleum
hydrocarbons had leaked and migrated onto the
said plaintiffs' properties. Plaintiffs and
each of them were harmed as alleged ....

16   Defendant moves to dismiss the Fourth Cause of Action on the

17  ground that Plaintiffs have not alleged any fiduciary

18  relationship or transaction between Defendant and Plaintiffs that

19  would give rise to a duty to disclose.

20      Plaintiffs concede that, ordinarily, a failure to disclose

21  material facts is not actionable fraud unless there is some

22  fiduciary relationship giving rise to a duty to disclose.

23  However, Plaintiffs contend "'[t]he duty to disclose may arise

24  without any confidential relationship where the defendant alone

25  has knowledge of material facts which are not accessible to the

26  plaintiff.'" *Magpali v. Farmers Group, Inc.*, 48 Cal.App.4th 471,

31

482 (1996).   In addition, Plaintiffs contend, "[e]ven if a fiduciary relationship is not involved, a nondisclosure claim arises when the defendant makes representations but fails to disclose additional facts which materially qualify the facts disclosed, or which render the disclosure likely to mislead." *Roddenberry v. Roddenberry*, 44 Cal.App.4th 634, 666 (1996). Relying on these principles, Plaintiffs assert that they have alleged that Defendant possessed knowledge about its wrongful acts of contamination, affecting nearby landowners and that Plaintiffs did not possess such knowledge.   Plaintiffs further assert that they have alleged they reasonably relief upon their belief that Defendant was operating the storage facility in a safe manner and that no danger existed to Plaintiffs or their properties.

The Fourth Cause of Action does not state a claim upon which relief can be granted.   Plaintiffs have not and cannot allege that Defendant alone has knowledge of material facts which were not accessible to the Plaintiffs.   From the documents submitted with Defendant's Request for Judicial Notice, both the Merced County Department of Public Health and the Regional Water Quality Control Board were aware of the information that petroleum hydrocarbons were leaking at the storage facility and ultimately were aware that they may have migrated under Plaintiffs' properties.   Plaintiffs have not alleged any affirmative misrepresentation by Defendant; they only allege their belief that Defendant "would" operate the storage facility in a safe

32

1 manner.  This does not implicate a duty to disclose.  No claim

2 for  concealment or fraud has been stated.  The motion to dismiss

3 the Fourth Cause of Action is GRANTED WITH LEAVE TO AMEND.

4            4.  **FIFTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF**

5 **EMOTIONAL DISTRESS**.

6     The Fifth Cause of Action for intentional infliction of

7 emotional distress, after incorporating all prior allegations

8 alleges in pertinent part:

9         64.  Defendants, and each of them,
intentionally caused said plaintiffs severe

10 and continuing emotional distress.
Defendants and each of their conduct was

11 extreme and outrageous and displayed a
reckless disregard of the probability of

12 causing emotional distress.  Defendants and
each of them, learned that petroleum

13 hydrocarbons had leaked into the soil in and
around said defendants' storage facility.

14 Said defendants learned by at least 1993 that
petroleum hydrocarbons had migrated through

15 the soil and groundwater and off of their
storage facility, but failed to inform

16 plaintiffs or any of them of said findings.

17         65.  In April of 2004, Defendants notified
said plaintiffs of the potential of the

18 existence of petroleum hydrocarbons near said
plaintiffs' properties.  Testing confirmed

19 the presence of petroleum hydrocarbons in the
soil on and/or under said plaintiffs'

20 respective properties and subadjacent
groundwater in December of 2004, over 10

21 years after defendants learned of the
potential migration of hydrocarbons onto said

22 plaintiffs' properties.

23         66.  Plaintiffs and each of them, upon
learning of the presence of petroleum

24 hydrocarbons first near, and later on, their
properties, suffered severe emotional

25 distress both because of damage to their
properties as well as potential health risks

26 to themselves and their families.

67. Defendants and each of their conduct by first causing the leak of petroleum hydrocarbons into the soil and groundwater and then knowingly and/or intentionally concealing the existence of petroleum hydrocarbons near said plaintiffs' homes caused said plaintiffs, upon learning of the presence of petroleum hydrocarbons on, and under, their soil and subadjacent ground water, severe emotional distress.

68. As a result of exposure to petroleum hydrocarbons and its constituent product, benzene, toluene, xylenes, MTBE, tetryl ethyl lead (TEL) and other known carcinogens and harmful compounds contained in petroleum hydrocarbons, the need for future medical monitoring is reasonably certain, and given the long exposure plaintiffs and each of them have suffered and the highly toxic nature of the substances, the need for future medical monitoring is reasonable.

69. As a result of living over the toxic plume for over two years and possibly much longer, plaintiffs and each of them have suffered and will continue to suffer, significant and extended exposure to known carcinogens contained in petroleum hydrocarbons, which have migrated under their respective properties.

70. California Proposition 65 lists benzene, ethyl benzene and toluene as known carcinogens and/or chemicals known to cause reproductive toxicity. Defendants own testing shows high concentrations of those chemical compounds in the soil and subadjacent ground water on and under plaintiffs property.

71. Plaintiffs and each of them suffer risk of cancer, specifically leukemia, which is raised significantly by exposure to benzene in the air, ground and water. Plaintiffs ... can be significantly helped by early and ongoing detection of benzene exposure and the presence of it in their respective environment or in or on their respective person. Medical detection is necessary as is medical monitoring until a reasonable amount

34

> of time has passed after all contaminants
> have been completely removed from the herein
> described soil.  It is reasonable given said
> plaintiffs' past and ongoing exposure, and
> said defendants' failure to take steps to
> remedy said plaintiffs' exposure.

Defendants move to dismiss this cause of action, relying on *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965 (1993).

In *Potter*, residents living near a landfill, at which the dumping of toxic substances was prohibited, brought an action against Firestone for dumping toxic waste materials at the site, alleging that their water supply was thereby contaminated.  The trial court entered judgment for plaintiffs, finding that Firestone was negligent, that negligent and intentional infliction of emotional distress was established, and that Firestone's conduct was ultrahazardous activity that would subject Firestone to strict liability.  Plaintiffs were awarded damages for their fear of cancer and resultant emotional distress, punitive damages, and damages for future medical monitoring.

The Court of Appeal reversed the awards for medical monitoring costs, as well as a postjudgment order directing Firestone to pay costs and interest, but otherwise affirmed the judgment.  The Supreme Court reversed the judgment of the Court of Appeal that had affirmed the award of punitive damages and the fear of cancer damages.  It also overturned the reversal of the award for future medical monitoring.  As to the award of damages for intentional infliction of emotional distress, the Supreme

35

Court ruled:

> 'The elements of the tort of intentional
> infliction of emotional distress are: "'(1)
> extreme and outrageous conduct by the
> defendant with the intention of causing, or
> reckless disregard of the probability of
> causing, emotional distress; (2) the
> plaintiff's suffering severe or extreme
> emotional distress; and (3) actual and
> proximate causation of the emotional distress
> by the defendant's outrageous conduct ....'
> Conduct to be outrageous must be so extreme
> as to exceed all bounds of that usually
> tolerated in a civilized community." ... The
> defendant must have engaged in "conduct
> intended to inflict injury or engaged in with
> the realization that injury will result."
> ....' (*Christensen, supra,* 54 Cal.3d at
> p.903.)
>
> In *Christensen, supra*, we held that '"[t]he
> law limits claims of intentional infliction
> of emotional distress to egregious conduct
> *toward plaintiff* proximately caused by
> defendant." ... The only exception to this
> rule is that recognized when the defendant is
> aware, but acts with reckless disregard, of
> the plaintiff and the probability that his or
> her conduct will cause severe emotional
> distress to that plaintiff ... Where reckless
> disregard of the plaintiff's interests is the
> theory of recovery, the presence of the
> plaintiff at the time the outrageous conduct
> occurs is recognized as the element
> establishing a higher degree of culpability
> which, in turn, justifies recovery of greater
> damages by a broader group of plaintiffs than
> allowed on a negligent infliction of
> emotional distress theory ....'
> (*Christensen, supra*, 54 Cal.3d at pp. 905-906
> ....)
>
> Thus, '[i]t is not enough that the conduct be
> intentional and outrageous.  It must be
> conduct *directed at the plaintiff*, or occur
> in the presence of a plaintiff *of whom the
> defendant is aware*.'  (*Christensen, supra*, 54
> Cal.3d at p. 903 ....)  'The requirement that
> the defendant's conduct be directed primarily
> at the plaintiff is a factor which

36

distinguishes intentional infliction of
emotional distress from the negligent
infliction of such injury.' ....

In this case, it is ambiguous whether the
lower courts determined that Firestone's
conduct was directed at these particular
plaintiffs in the sense intended by
*Christensen* ... Although the Court of Appeal
correctly rejected Firestone's contention
that Firestone was not liable because it did
not know the particular names of any
individual whose groundwater was contaminated
by the hazardous waste, it is unclear whether
it believed that Firestone was actually aware
of the presence of these particular
plaintiffs and their consumption and use of
the water.

Furthermore, it is questionable whether the
trial court made a finding that Firestone
possessed the requisite knowledge, and if so,
whether such a finding would be supported by
substantial evidence.  Although the trial
court concluded that Firestone 'had to
realize' that the eventual discovery of the
toxic contamination 'by those drinking the
contaminated water would almost certainly
result in their suffering severe emotional
distress,' this may be interpreted in one of
two ways.  First, this may have been a
finding that Firestone actually knew of these
particular plaintiffs and their consumption
of the water, and nevertheless sent
prohibited wastes to Crazy Horse despite a
realization that plaintiffs would almost
certainly suffer severe emotional distress
upon their discovery of the facts.
Alternatively, this may have been a finding
that Firestone had to have realized that its
misconduct was almost certain to cause severe
emotional distress to any person who might
foreseeably consume the water and
subsequently discover the facts.  Although
the knowledge requirement is met under the
first interpretation of the court's ruling,
it is not satisfied under the second because
knowledge of *these particular plaintiffs* is
lacking.

This conclusion is consistent with the result

37

reached in *Christensen* ... There we held
that, even though it was alleged that
defendants' conduct in mishandling the
remains of deceased persons was intentional
and outrageous and was substantially certain
to cause extreme emotional distress to
relatives and close friends of the deceased,
the plaintiffs' cause of action for
intentional infliction of emotional distress
was not sufficiently supported where there
was no allegation that the defendants'
misconduct was directed primarily at
plaintiffs, or that it was calculated to
cause them severe emotional distress, or that
it was done with knowledge of their presence
and with a substantial certainty that they
would suffer severe emotional injury.
(*Christensen, supra*, 54 Cal.3d at pp. 903,
906.)

...

For guidance of the lower courts should the
Court of Appeal determine that a retrial on
this claim is appropriate, we hold that
recovery of fear of cancer damages in actions
for intentional infliction of emotional
distress should not depend on a showing of a
medically corroborated belief that it is more
likely than not that the plaintiff will
develop the feared cancer as a result of the
toxic exposure.

The reasons for not applying the more likely
than not threshold are obvious.  First, the
intentional infliction cause of action
requires a showing of 'extreme and outrageous
conduct' which is directed at the plaintiff
... Thus, a high degree of culpability is
required which justifies recovery of greater
damages by a broader group of plaintiffs than
allowed in an ordinary negligence action ...
Moreover, where a defendant undertakes
extreme and outrageous conduct toward the
plaintiff, the concern that liability will be
imposed out of proportion to fault is not
present.  Finally, the requirement of extreme
and outrageous conduct directed at the
plaintiff places adequate limitations on the
class of potential plaintiffs who might sue
for fear of cancer under this theory.

38

> Therefore, the public policy concerns
> supporting application of the heightened
> threshold (see pt. II.A.2.c., *ante*) are not
> implicated.
>
> Of course, even though the heightened
> threshold is not applicable to intentional
> infliction actions, it must nevertheless be
> established that the plaintiff's fear of
> cancer is reasonable, that is, that the fear
> is based upon medically or scientifically
> corroborated knowledge that the defendant's
> conduct has significantly increased the
> plaintiff's risk of cancer and that the
> plaintiff's actual risk of the threatened
> cancer is significant.  Reasonableness of the
> fear is required because in intentional
> infliction actions, recovery is allowed only
> for 'severe or extreme emotional distress.'
> ... Severe emotional distress means
> '"emotional distress of such substantial
> quality or enduring quality that no
> reasonable [person] in civilized society
> should be expected to endure it."' ....

6 Cal.4th at 1001-1004.

At the hearing, Defendant argued that the Fifth Cause of Action fails to allege that Defendant's conduct was outrageous or that the conduct was directed to these particular plaintiffs. Defendant further argued that each plaintiff must specifically allege a significant risk of cancer on an individual basis.

Although the Fifth Cause of Action does not allege that Defendant's conduct was directed toward the named plaintiffs as required by *Potter* and *Christensen*, *Potter* makes clear that the heightened pleading required under California pleading laws to state a claim for negligent infliction of emotional distress, *see infra*, has no application to a claim for intentional infliction of emotional distress based on a fear of cancer.  This claim is

39

best addressed by dispositive motion.   The motion to dismiss is DENIED.

         5. SIXTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; FEAR OF CANCER.

    The Sixth Cause of Action for negligent infliction of emotional distress based on a fear of cancer alleges that each plaintiff was exposed to toxic and carcinogenic substances as a result of Defendant's negligent conduct; and further alleges:

         75.  Defendants ... acted with malice, oppression and/or fraudulent intent because said defendants' conduct was despicable and was carried out with wilful and/or conscious disregard of said plaintiffs' rights and/or safety and that said defendants knew of petroleum hydrocarbons, knew that the petroleum hydrocarbons had migrated off of their property, and that the petroleum hydrocarbons had migrated near said plaintiffs' properties.  Despite this fact, said defendants failed to alert or notify any of the said plaintiffs that the potential existed for petroleum hydrocarbons to be in and/or under said plaintiffs' soil, despite the fact that said defendants ... knew of the existence of these hydrocarbons for over 10 years prior to disclosure.

         76.  Defendants ... knowingly and/or intentionally concealed the said material facts known to said defendants, with a willful and knowing disregard of the safety of others and of said plaintiffs and that said concealment would expose said plaintiffs and each of them to significant harm.

         77.  Plaintiffs, and each of them, have suffered serious emotional distress from fears that they will develop cancer and/or long term health effects as a result of said exposure.  Reliable medical or scientific opinion confirms that plaintiffs' risks of developing cancer and/or long term health effects will significantly increase by the

40

exposure and an actual risk that is
significant.

In *Potter v. Firestone Tire & Rubber Co.*, *supra,* 6 Cal.4th
965, the Supreme Court addressed a similar claim of negligent
infliction of emotional distress.  The Supreme Court held that
the Court of Appeal erred in concluding the reasonableness of
plaintiffs' fear of cancer claims was established by the mere
fact of exposure to toxins or a significant increase in the risk
of cancer.  Absent a present physical injury or illness, fear of
cancer damages are recoverable only if the fear stems from
knowing it is more likely than not that the plaintiff will
discover cancer due to the exposure.  The Supreme Court held that
these plaintiffs were excepted from having to prove it was
probable that cancer would develop, since Firestone's conduct
brought the case within the "oppression, fraud or malice"
exception for recovery for fear of cancer damages.  The
California Supreme Court held:

> [W]ith respect to negligent infliction of
> emotional distress claims arising out of
> exposure to carcinogens and/or other toxic
> substances: Unless an express exception to
> this general rule is recognized, in the
> absence of a present physical injury or
> illness, damages for fear of cancer may be
> recovered only if the plaintiff pleads and
> proves that (1) as a result of the
> defendant's negligent breach of a duty owed
> to the plaintiff, the plaintiff is exposed to
> a toxic substance which threatens cancer; *and*
> (2) the plaintiff's fear stems from a
> knowledge, corroborated by reliable medical
> or scientific opinion, that it is more likely
> than not that the plaintiff will develop the
> cancer in the future due to the toxic
> exposure.  Under this rule, a plaintiff must

41

> do more than simply establish knowledge of a
> toxic ingestion or exposure and a significant
> increased risk of cancer.  The plaintiff must
> further show that based upon reliable medical
> or scientific opinion, the plaintiff harbors
> a serious fear that the toxic ingestion or
> exposure was of such magnitude and proportion
> as to likely result in the feared cancer.

6 Cal.4th at 997.  There is an exception to this general rule,

where the plaintiff pleads and proves that the defendant's

conduct in causing the exposure amounts to "oppression, fraud, or

malice" as defined in Civil Code § 3294:

> [I]n the absence of a physical injury or
> illness, a plaintiff may recover damages for
> negligently inflicted emotional distress
> engendered by a fear of cancer without
> meeting the more likely than not threshold if
> the plaintiff pleads and proves that: (1) as
> a result of the defendant's negligent breach
> of a duty owed to the plaintiff, he or she is
> exposed to a toxic substance which threatens
> cancer; (2) the defendant, in breaching its
> duty to the plaintiff; acted with oppression,
> fraud or malice as defined in Civil Code
> section 3294; *and* (3) the plaintiff's fear of
> cancer stems from a knowledge, corroborated
> by reliable medical or scientific opinion,
> that the toxic exposure caused by the
> defendant's breach of duty has significantly
> increased the plaintiff's risk of cancer *and*
> has resulted in an actual risk of cancer that
> is significant.

*Id.* at 999-1000.  The Supreme Court's holding "is equally

relevant to emotional distress engendered by fear that other

types of serious physical illness or injury may result from toxic

exposure."  *Id.* at 980 n.5.

Defendant invokes *Potter* to argue the allegations of the

Amended Complaint do not satisfy the *Potter* requirements for the

recovery of fear of cancer damages arising from negligent

infliction of emotional distress, because each individually named
plaintiff has not made the required allegations.  Defendant
asserts that "risk is an individual issue, not group", which
depends on various factors such as age, lifestyle, etc.

Defendant's motion is without merit.  The Amended
Complaint's allegations meet the *Potter* requirements, especially
in light of federal notice pleading requirements.  Whether or not
Plaintiffs can prove their respective entitlement to such
recovery is a matter for the trier of fact.

Defendant's motion to dismiss the Sixth Cause of Action is
DENIED.

6.   SEVENTH AND EIGHTH CAUSES OF ACTION FOR VIOLATION
CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 *et seq*.

The Seventh Cause of Action incorporates all preceding
allegations and  alleges that California Business & Professions
Code §§ 17200 provides that "unfair competition shall mean and
include any unlawful, unfair, and fraudulent business practice";
and goes on further to allege:

81.  Defendants, and each of them, did engage
in and continue to engage in the practice of
intentionally, willfully and wantonly
operating their bulk fuel storage facility
despite knowing as early as 1988 or before
that there was ongoing leakage at said
facility and that said leak was substantial
enough to cause large amounts of highly toxic
chemicals to leak into the soil and
subadjacent groundwater.  Defendants and each
of them persisted and continue to persist in
this practice to the present time.

82.  Defendants and each of them concealed
the fact that petroleum hydrocarbons had

43

[begun] to leak into the soil and groundwater around the 'storage facilities' in the 1970's and 1980's.  After said defendants started [performing] tests and maintaining records in approximately 1988, said defendants knew or should have known, that based on the sheer amount of petroleum hydrocarbons in the soil and groundwater most certainly had migrated off of the 'storage facilities.'  By the time the said defendants started conducting tests off of the 'storage facilities' site in 1993, defendants and each of them knew of the large amounts of petroleum hydrocarbons present in the adjacent soil, yet failed to notify surrounding residents of the danger.

...

84.  An action for injunctive relief and restitution under the Unfair Competition Act is specifically authorized by Business & [Professions] Code § 17203.

The Eighth Cause of Action incorporates all preceding allegations and alleges:

88.  Proposition 65 requires clear and reasonable warnings be given by persons who, in the course of doing business, knowingly and intentionally expose any individual to a chemical known to the State of California to cause cancer or reproductive harm.

89.  Plaintiffs are informed and believe, and thereon allege, that Defendants, and each of them, have engaged in conduct which violates Health & Safety Code § 25249.6 et seq.  This conduct includes releasing into the environment harmful substances in the form of petroleum hydrocarbons containing Proposition 65 listed chemicals ... without a clear and reasonable warning or notice to persons potentially or actually affected, within the meaning of Health & Safety Code §§ 25249.6 and 25249.11.

90.  In addition, said defendants have engaged in unfair competition in violation of Business & [Professions] Code § 17200 by operating their facility in violation of

44

> State and Federal environmental laws, and by
> allowing the ongoing release of chemicals
> known to cause cancer and birth defects while
> said defendants competitors in the industry
> were expected to operate in a safe, ethical
> and fair manner.
>
> ...
>
> 94.  By committing the acts alleged above,
> said defendants and each of them, have
> violated and continue to violate Proposition
> 65, and thereby have engaged in an unlawful
> business practice constituting unfair
> competition in violation of California
> Business & Professions Code § 17203.

California Health & Safety Code § 25249.6 provides:

> No person in the course of doing business
> shall knowingly and intentionally expose any
> individual to a chemical known to the state
> to cause cancer or reproductive toxicity
> without first giving clear and reasonable
> warning to such individual, except as
> provided in Section 25249.10.

Defendant moves to dismiss the Seventh Cause of Action because the Amended Complaint does not allege that Defendant "is in violation of any permit requirement governing its operations, that Defendant is in violation of any Regional Water Quality Control Board order, or that Defendant is in violation of any law whatsoever."  Defendants assert that, because Plaintiffs cannot plead a material violation of law, they premise the Seventh Cause of Action on a failure to warn theory, and:

> This assertion is rather amazing because
> Plaintiffs cannot deny that they were
> apprised of, and warned about, site
> conditions by the Regional Water Quality
> Control Board and the Defendant.  Considering
> that the Regional Water Quality Control Board
> and the Merced County Department of Public
> Health were aware of the existence of the

45

> contamination from the inception of its
> discovery in 1988, of all of the material
> conditions plead in the Complaint, and of the
> current status of Defendant's operations, the
> Complaint's silence speaks volumes.

Plaintiffs respond that Defendant's contention that no violations of law are alleged is belied by the allegations in the Amended Complaint.

The only laws alleged to have been violated by Defendants are Proposition 65 and Business & Professions Code § 17200.  At the hearing, Plaintiffs conceded that they cannot bring a private right of action for violation of Proposition 65 because they have not complied with the requirements in California Health & Safety Code § 25249.7(d)(1).

This concession precludes Plaintiffs' reliance on the Unfair Competition Law to state a claim against Defendants under either the Seventh or the Eighth Causes of Action.  *See In re Vaccine Cases*, 134 Cal.App.4th 438, 457-459 (2005)("Proposition 65 conditioned a private right of action for violation of the [Safe Drinking Water and Toxic Enforcement Act of 1986, Health & Safety Code §§ 25249.5 *et seq.*] on compliance with these substantive provisions.  To allow plaintiffs to bring a UCL action against ... defendants without complying with section 25249.7, subdivision (d)(1), would frustrate the purpose of this requirement and would nullify its enactment.")

Defendants further move to dismiss the Seventh Cause of Action to the extent that the Seventh Cause of Action seeks restitution as a remedy.  Defendant cites *State v. Altus Finance,*

46

*S.A.,* 36 Cal.4th 1284, 1304 (2005): "A UCL claim for restitution seeks to compel 'defendant[s] to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.' ....." Defendants note that Plaintiffs have not alleged that Defendant ever obtained Plaintiffs' money or that Plaintiffs ever had an ownership interest in any of the defendants' profits.

At the hearing, Plaintiffs explained that their theory underlying the Seventh Cause of Action is that Defendant operated at a competitive advantage over other oil companies, which resulted in a greater profit to Defendant.   Defendant complained that Plaintiffs cite no case to support their theory.

In *Kraus v. Trinity Management Services, Inc.*, 23 Cal.4th 116, 127 (2000), the California Supreme Court commented:

> An order that an defendant disgorge money obtained through an unfair business practice may include a restitutionary element, but is not so limited ... [S]uch orders may compel a defendant to surrender all money obtained through an unfair business practice even though not all is to be restored to the persons from whom it was obtained or those claiming under those persons.  It has also been used to refer to surrender of all profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice.

*Kraus* provides arguable authority supporting Plaintiff's theory of restitution.  Because the Seventh Cause of Action does not allege facts that state a Section 17200 claim, dismissal of the

Seventh Cause of Action is GRANTED WITH LEAVE TO AMEND.

As to the Eighth Cause of Action, Defendant, assuming that the warning required by Health & Safety Code § 25249.6 applies, argues "that the impossibility of alleging a lack of warning is apparent on the face of the Complaint" because of the allegations that the Regional Water Quality Control Board issued the April 8, 2004 letter warning Plaintiffs that the contamination may have migrated beneath Plaintiffs' properties and that Defendants warned Plaintiffs in April 2004.   Defendant argues:

> Plaintiffs' Complaint thus plainly demonstrates that Plaintiffs have known for over three and a half years, and were warned by Defendant over three and a half years ago, of the very same purported risk of chemical exposure Plaintiffs now seek to make the subject of a judicial injunction.  The waste of judicial resources, not to mention the absurdity, inherent if Plaintiffs' cause of action is transparent.  Proposition 65 is a warning statute, not a prohibition on the release of chemicals ... Plaintiffs allege that they received that warning years ago.

At the hearing, Plaintiffs contended that the Eighth Cause of Action relates to the time period prior to the 2004 warnings. However, as discussed above, Plaintiffs cannot rely on a violation of Section 25249.6 to state a claim based on an unfair business practice.

The motion to dismiss the Seventh and Eighth Causes of Action is GRANTED WITH LEAVE TO AMEND.

6.   <u>NINTH CAUSE OF ACTION FOR DECLARATORY RELIEF AND EQUITABLE INDEMNITY</u>.

Defendant moves to dismiss this cause of action on the

ground the Amended Complaint fails to allege any facts from which it may be inferred that a "controversy has arisen and now exists."  Defendant contends that Plaintiffs have not and cannot allege that Defendant has ever asserted that Plaintiffs are responsible for any contamination of their properties or that any agency or other entity has made such an assertion or requested any action by Plaintiffs.

At the hearing, Plaintiffs asserted that some of them are landlords and that the Ninth Cause of Action seeks to protect those Plaintiffs from liability by tenants for harm caused to those tenants by Defendants' alleged acts and omissions.

The motion to dismiss the Ninth Cause of Action is DENIED.[1]

D.   <u>DEFENDANT'S MOTION TO STRIKE</u>.

Defendant motion to strike the allegation in the Amended Complaint at Paragraphs 19-21 pertaining to CERCLA § 309 preemption and the CERCLA statute of limitations is GRANTED. CERCLA is inapplicable to releases of petroleum under CERCLA's "petroleum exclusion."  The entire section of the Amended Complaint captioned "Statutory Background and Definitions" is stricken; these allegations have no place under Rule 8(a)(2) and are immaterial.  To this extent, the motion to strike is GRANTED.

CONCLUSION

For the reasons stated:

1.   Plaintiffs' motion to remand is DENIED;

---

[1]Because leave to amend is granted, Defendant's motion to dismiss the prayer for punitive damages is not addressed.

**2.   Defendant's motion to dismiss is DENIED IN PART AND GRANTED IN PART WITH LEAVE TO AMEND:**

> **a.   The Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Causes of Action are DISMISSED WITH LEAVE TO AMEND as barred by the statute of limitations and failure to plead the discovery rule;**
>
> **b.   The Fourth Cause of Action is DISMISSED WITH LEAVE TO AMEND;**
>
> **c.   The motion to dismiss the Fifth and Sixth Causes of Action is DENIED;**
>
> **d.   The Seventh and Eighth Causes of Action are DISMISSED WITH LEAVE TO AMEND;**
>
> **e.   The motion to dismiss the Ninth Cause of Action is DENIED.**

**3.   Defendants' motion to strike is GRANTED to the extent set forth in this Memorandum Decision.**

**4.   Counsel for Defendant shall prepare and lodge a form of order setting forth the rulings in this Memorandum Decision within five (5) court days following the date of service of this decision;**

**5. Plaintiff shall file a Second Amended Complaint within 20 days after the filing of the Order.**

IT IS SO ORDERED.

Dated:   __January 28, 2008__          _____/s/ Oliver W. Wanger_____
                                       UNITED STATES DISTRICT JUDGE