```
 1

 2

 3

 4

 5

 6            IN THE UNITED STATES DISTRICT COURT FOR THE

 7                  EASTERN DISTRICT OF CALIFORNIA

 8

 9  LARRY BONDS, et al.,          )      No. CV-F-07-1600 OWW/DLB
                                  )
10                                )      MEMORANDUM DECISION AND
                                  )      ORDER DENYING IN PART AND
11              Plaintiff,        )      GRANTING IN PART WITH LEAVE
                                  )      TO AMEND DEFENDANTS' MOTION
12         vs.                    )      TO DISMISS AND TO STRIKE
                                  )      SECOND AMENDED COMPLAINT
13                                )      (Docs. 37 & 40)
    NICOLETTI OIL, INC., et al.,  )
14                                )
                                  )
15              Defendant.        )
                                  )
16  _____)
```

17        Plaintiffs Larry Bonds, Gayle Bonds, Jesus Aguilar, Joe

18   Anderson, Rose Anderson, Jim Ballanger, Jeanie Ballanger, Charles

19   Bates, Loretta Bates, Pedro Bermudez, Hortencia Bermudez, Linda

20   Butler, Gloria Cardenas, Thomas M. Climer, David Darnell, Felix

21   Esquivel, Delia Esquivel, Pablo Martinez, Ezequivel Ortega, Joe

22   Ortega, Hope Ortega, Bobby Parsons, and Jeff Sullivan have filed

23   a Second Amended Complaint (SAC) against Nicoletti Oil Inc. and

24   Does 1-100.  The SAC was filed pursuant to the Memorandum

25   Decision (Memorandum Decision) granting in part and denying in

26   part Defendant's motion to dismiss the First Amended Complaint

                               1

(Doc. 30).

The SAC alleges that Plaintiffs are residents of Dos Palos, California whose homes are located on the north side of Blossom Street and north of Defendant's bulk fuel storage and fueling facility.  In the section the SAC captioned "Common Facts," it is alleged:

> 8. Plaintiffs' properties and the "storage facility" of "Defendants," and each of them, are separated on the South by Blossom Street. A small road bisects the neighborhood East to west. "Defendants'" underground and aboveground storage tanks and supply lines contain gasoline and other petroleum hydrocarbons. Said fuel contains benzene and toluene and other substances known in the state of California to cause cancer and birth defects. The "storage facility" is between 50 and 175 feet from Plaintiffs' yards and homes. The ground water in the area is very shallow running between 2.5 and 7 feet below the ground. The groundwater is observed to move North and Northwest, approximating the flow of the San Joaquin River.
>
> 9. At all times mentioned in this complaint, "Defendants," and each of them have occupied, used, and maintained their premises in a manner such that gasoline, diesel fuel, aviation fuel, other petroleum hydrocarbons, and/or benzene leaked from underground and aboveground storage tanks and supply lines. Leaks from the storage tanks on defendants' property have migrated into and contaminated the soil and groundwater on Plaintiffs' property.
>
> 10. Through its own testing, "Defendants" knew by at least 1988 of the presence of petroleum hydrocarbons in subsurface soil and groundwater. The "storage facility" suffered leaks that started to migrate into the surrounding soil and groundwater. "Defendants" conducted tests on their own premises in 1988 and again in 1993. The series of tests showed high levels of

2

petroleum hydrocarbons containing benzene, xylenes, toluene, tetryl ethyl lead and other harmful and carcinogenic compounds. In 1994 "Defendants" installed monitoring wells off their property on Blossom Street, North of the facility. In 1995, petroleum hydrocarbon concentrations were seen to increase. Later, "floating product" was observed in the wells North of the "Defendants'" property. "Defendants" made no effort to determine the extent of the spill despite continued high readings in their own monitoring tests. In 2002, "Defendants'" results showed the presence of benzene at 25,000 micrograms per liter of water, and ethyl benzene at 7,400 micrograms per liter of water. Both compounds are toxic and are listed as carcinogens in the State of California. (*See Chronology listed in the Site Assessment Report, Site Background prepared by Defendant Testing Consultants dated March 5, 2004, attached hereto as Exhibit A* ) "Defendants" did not notify the surrounding residences and businesses of the presence of high levels of petroleum hydrocarbons in areas outside of the "Defendants'" properties. Neither did "Defendants" attempt to test any area beyond those monitoring wells installed in 1993 despite having knowledge of the presence of high levels of petroleum hydrocarbons in the monitoring wells installed North of "Defendants'" property and near "Plaintiffs'" (and each of them) property.

11. On April 8, 2004, the California Regional Water Quality Control Board issued a letter (*attached hereto as Exhibit B*) notifying the owners of the properties North of "Defendants'" facility that contamination "may have migrated beneath Plaintiffs' properties."

12. In November of 2004, "Defendants" began to install the first nested wells on all of the herein named Plaintiffs' properties, and monitoring of these wells began on December 22, 2004. Plaintiffs therefore had no notice that petroleum hydrocarbons existed on and under their property until December 22, 2004. At no time prior to Plaintiff's receipt of the April 8, 2004, letter from the California

3

Regional Water Quality Control Board did any
of the Plaintiffs' have any knowledge of any
facts which caused them to suspect that
anyone may have caused contamination of the
soil or groundwater on their property . There
was at no time prior to the April 8, 2004,
letter from the California Regional Water
Quality Control Board any newspaper or other
periodical discussing any drilling,
monitoring, or other activity on or near
Plaintiffs' properties. The Plaintiffs first
learned that Defendants were monitoring and
testing soil and ground water for
contamination when Plaintiffs received copies
of the quarterly monitoring reports from the
California Regional Water Quality Control
Board on or about December 22, 2004. The
reports from the California Regional Water
Quality Control Board listed all testing and
monitoring activities for contamination, at
or near Defendant's job site from 1983 to
2004.  The receipts of these reports in late
December of 2004, constituted Plaintiffs'
first notice of any monitoring activities by
Defendants of contamination of Plaintiffs'
soil and/or ground water.  None of the
Plaintiffs have any knowledge or recollection
of any drilling or monitoring of
investigatory wells on or near their
properties prior to December 22, 2004.

13. "Defendants" completed construction of a
remediation system under order from the
California Regional Quality Control Board and
began operation of said system on or about
December 22, 2005. This method was/is the
least aggressive remedial solution from which
"Defendants" could choose.

14. "Defendants," and each of them, in
conjunction with previous "storage facility"
owner Exxon/Mobil Corporation, began
operation of a Groundwater Pump & Treat
(GWP&T) system, as well as a Soil Vapor
Extraction (SVE) method. This method of
removal will take more than a decade to
remove the contaminants, if it is successful.
In fact, Defendant's [sic] represented to the
California Regional Water Quality Control
Board, in the later part of 2005, and early
2006, that the remediation of the

4

contamination of properties currently owned
by Plaintiffs would not be substantially
completed for five to ten years. The
contamination of properties currently owned
by Plaintiffs will therefore continue, by
Defendant's own admissions, to at least 2010
to 2015.

15. The Plaintiffs and each of them have
sought to resolve this matter informally and
the parties executed statute tolling
agreements effective April 8, 2005 and
running through April 8, 2007 (*See tolling
agreement attached as Exhibit C*). The parties
agreed to extend the statute tolling
agreement until October 8, 2007(*See extended
tolling agreement attached as Exhibit D*).
The agreement required that if any party was
to opt out of the tolling agreement, that
party was to give 60 days notice, said notice
to be mailed certified, return receipt
requested.

16. Following the failure of the parties to
reach a resolution, Plaintiffs sent proper
notice of their intent to terminate the
statute tolling agreement. (*attached hereto
as Exhibit E*).

17. The parties executed a one week extension
of the tolling agreement on August 30, 2007
in an effort to reach a settlement agreement
before the final expiration of the agreement
(*See letter attached as Exhibit F*). Said
settlement agreement attempt failed. The
tolling agreement therefore tolled the
running of any statutes from April 8, 2005
until September 12, 2007.

18. As a result of the "Defendants'" acts
and/or omissions, Plaintiffs and each of them
have suffered damages including, but not
limited to, an interference with the use of
their residential property, a diminution in
the property's value, and other substantial
costs and expenses. Plaintiffs and each of
them are informed and believe and based
thereon allege that they and each of them
individually, have suffered damages in excess
of $25,000 in diminution of their property
value as a result of the presence of the

5

contaminants of benzene, ethyl benzene, toluene and tetryl ethyl lead on their property.

19. As a result of the defendants' acts or omissions, Plaintiffs and each of them, have suffered physical damage to their respective property as a result of contamination from the petroleum hydrocarbons, including contamination from toluene, benzene, tetryl ethyl lead and ethyl benzene. Such contamination is harmful to the surface, subsurface, groundwater and structures on the lots, in that the presence of such contaminants makes the property less suitable for habitation, because of the build up of dangerous pollutants in the soil, air and water, and the build up of potentially explosive gases in the confined spaces of the structures on the property. Additionally, the presence of hydrocarbons renders the property unusable for gardening, providing a safe play area for children or a place for the Plaintiffs to relax or entertain.

20. Since Plaintiffs and each of them purchased their respective properties, the values of surrounding properties in the area have increased. Were it not for the presence of contaminants, Plaintiffs' properties would have increased in fair market value. Plaintiffs and each of them have incurred or will incur other expenses in an amount to be determined in addition to those alleged above including, without limitation, closing costs, title insurance, casualty and liability insurance, principal and interest on obligations outstanding, taxes, fees for engineers and consultants and moving expenses. Plaintiffs and each of them continue to incur expenses in an amount unknown to said Plaintiffs at this time. Plaintiffs and each of them will pray leave of court to amend this complaint to insert herein the full amount of those expenses when they are ascertained. All of these expenses were necessary, and all were made in good faith reliance that the property was free from contamination.

21. As a further legal cause of the

"Defendants'" acts and/or omissions,
Plaintiffs and each of them have incurred
great mental and nervous suffering and pain
due to nervousness, fright, worry and anxiety
about the certain potential health and
financial damages caused by "Defendants'"
acts and omissions. As a result of such
injuries, Plaintiffs have suffered general
damages in an amount to be proven, but not
less that $25,000.00 each.

22. In engaging in the acts set forth above,
"Defendants," and each of them, were guilty
of malice, fraud, and oppression as defined
in California Civil Code Section 3294.
Plaintiffs and each of them should recover in
addition to actual damages, damages to make
an example of and punish defendants, in an
amount to be determined.

23. Plaintiffs and each of them have incurred
and during the pendency of this action will
continue to incur, expenses for attorneys'
fees and costs herein. Such attorneys' fees
are necessary for the prosecution of this
action. The exact sum of such attorneys' fees
and costs is presently unknown and Plaintiffs
request the court's permission to amend this
claim for attorneys' fees when the amounts
are determined.

The SAC alleges the following causes of action: negligence;

private nuisance; trespass; fraud/concealment; intentional

infliction of emotional distress; negligent infliction of

emotional distress/fear of cancer; unlawful business practice in

violation of California Business & Professions Code § 17200; and

declaratory and equitable indemnity.

Defendant moves to dismiss the SAC for failure to state a

claim upon which relief can be granted pursuant to Rule 12(b)(6),

Federal Rules of Civil Procedure.  Defendant also moves to strike

those portions of the SAC referring to purported representations

7

to the California Regional Water Quality Control Board regarding the length of time required for remediation.

A.   **MOTION TO DISMISS**.

1.   **Governing Standards**.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001). "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Products Co.*, ___ F.3d ___, 2008 WL 1776522 (9th Cir.2008), quoting *Bell Atlantic Corp. v. Twombley*, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007). "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, *id.* at 1964-1965. Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean*

8

*Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984).  In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).  Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)  When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir.1988).

2.  <u>Statute of Limitations</u>.

Defendant moves to dismiss all causes of action alleged in the SAC except those for trespass, nuisance and negligence as barred by applicable statutes of limitations.  Defendant argues that the allegations in Paragraph 12 of the SAC do not suffice to comply with California's discovery rule.  Defendant contends that each and every plaintiff must specifically allege that he or she was reasonably diligent under their unique individual

circumstances.

The Memorandum Decision ruled in pertinent part:

With regard to the causes of action other than trespass, nuisance and negligence, the Memorandum Decision ruled in pertinent part:

> ... Defendant asserts that each Plaintiff is required to allege specific facts that delay the accrual of these time-barred causes of action.  Defendant places primary reliance on *McKelvey v. Boeing North America*, 74 Cal.App.4th 151 (1999).

> In *McKelvey*, the plaintiffs argued that the allegations of their complaints were sufficient to invoke the delayed discovery rule to overcome the bar of the statute of limitations.  The Court of Appeals disagreed:

> > The common law rule - that an action for personal injury or property damages accrues on the date of injury - applies only as modified by the 'discovery rule,' which provides that the accrual date of a cause of action is delayed until the plaintiff is aware of his injury and its negligent cause.  The plaintiff is charged with this awareness as of the date he suspects or should suspect that his injury was caused by wrongdoing, that someone has done something wrong to him.  Accordingly, the period of limitations will begin to run without regard to whether the plaintiff is aware of the specific facts necessary to establish his claim, provided that he has a 'suspicion of wrongdoing,' which he is charged with once he has 'notice or information of circumstances to put a reasonable person on inquiry.' ... A plaintiff whose complaint shows on its face that his claim would be barred without

10

> the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer ....

74 Cal.App.4th at 160. The Court of Appeals further noted:

> There is absolutely no authority for plaintiffs' fanciful contention that they had no duty of inquiry because they were not purchasers or tenants of property owned or managed by Boeing and thus were not in 'privity' with Boeing. When it is apparent from the face of the complaint that, but for the delayed discovery rule, the action would be time barred, it is the plaintiff's burden to show diligence. For this reason, the plaintiff must plead (and later prove) '*the facts showing: (a) lack of knowledge; (b) lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); (c) how and when he did actually discover the fraud or mistake. Under this rule, constructive and presumed knowledge are equivalent to knowledge. So, when the plaintiff has notice of information or circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books), the statute commences to run.*' (3 Witkin, Cal. Procedure (4th ed.1996) Actions, § 602, p.773, italics added.

74 Cal.App.4th 160 n.11.

11

In *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512-514 (2002), the Supreme Court rejected application of a heightened pleading standard in employment discrimination cases because such a standard conflicts with Rule 8(a)(2), Federal Rules of Civil Procedure, that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court held:

> Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it is rests.' ... This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. ... 'The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court.' ....
>
> Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake. This Court, however, has declined to extend such exceptions to other contexts. In *Leatherman* we stated: '[T]he Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under § 1983. *Expressio unius est exclusio alterius.*' ... Just as Rule 9(b) makes no mention of

12

municipal liability under ... §
1983 ..., neither does it refer to
employment discrimination.  Thus,
complaints in these cases, as in
most others, must satisfy only the
simple requirements of Rule 8(a).

Other provisions of the Federal
Rules of Civil Procedure are
inextricably linked to Rule 8(a)'s
simplified notice pleading
standard.   Rule 8(e)(1) states
that '[n]o technical forms of
pleading or motions are required,'
and Rule 8(f) provides that '[a]ll
pleadings shall be so construed as
to do substantial justice.'  Given
the Federal Rules' simplified
standard for pleading, '[a] court
may dismiss a complaint only if it
is clear that no relief could be
granted under any set of facts that
could be proved consistent with the
allegations.' ... If a pleading
fails to specify the allegations in
a manner that provides sufficient
notice, a defendant can move for a
more definite statement under Rule
12(e) before responding.  Moreover,
claims lacking merit may be dealt
with through summary judgment under
Rule 56.  The liberal notice
pleading of Rule 8(a) is the
starting point of a simplified
pleading system, which was adopted
to focus litigation on the merits
of the claim ....

In *California Sansome Co. v. U.S. Gypsum*, 55
F.3d 1402, 1407 (9th Cir.1995), the Ninth
Circuit, when discussing California's
discovery rule, stated: "All parties agree
that the burden is on Sansome to plead and
prove the facts necessary to toll the
limitations period once it is established
that it would have otherwise commenced."  In
*Adobe Lumber, Inc. v. Hellman*, 415 F.Supp.2d
1070, 1081 (E.D.Cal.2006), Judge Shubb ruled
in pertinent part:

Plaintiff correctly points out that

13

the heightened pleading standard of
the discovery rule seems to
conflict with the liberal notice
pleading standard in Federal rule
of Civil Procedure 8(a)(2).
However, the Ninth Circuit has
unequivocally held that in order to
rely on a defense to a statute of
limitations challenge provided by
state law, plaintiff must meet the
pleading requirements of state law.
*Cal. Sansome Co. v. U.S. Gypsum*, 55
F.3d 1402, 1407 (9th Cir.
1995)(recognizing that 'plaintiff
must allege specific facts
establishing the applicability of
the discovery-rule exception' but
need not 'specifically allege when
the cause of action accrued');
*Gallardo v. DiCarlo*, 203 F.Supp.2d
1160, 1169 n.[1]3
(C.D.Cal.2002)(refusing to apply
the discovery rule because
plaintiff failed to plead specific
facts addressing the time and
manner of discovery and plaintiff's
diligence).

It is unclear to what extent *California
Sansome Co.* remains good law - it was decided
years before *Swierkiewicz*.  The district
court opinions applying *California Sansome* do
not mention *Swierkiewicz*.  *Nagrampa v.
Mailcoups, Inc.*, 469 F.3d 1257, 1270 n.3 (9th
Cir.2006), notes:

Pleading requirements differ
between federal law and California
law.  California law requires that
a complaint contain 'a statement of
the facts constituting the cause of
action, in ordinary and concise
language.'  Cal.Civ.Proc.Code §
425.10(a)(1) ... On the other hand,
'[t]he Federal Rules do not use the
term "cause of action," and their
emphasis is on the factual rather
than the "legal right" aspects of
the cause of action.'  4 B.E.
Witkin, California Procedure § 25
(4th ed.2006).  The Federal Rules

14

do not require that the complaint state all of the facts constituting a cause of action:

> Conspicuously absent from Federal Rule 8(a)(2) is the requirement found in the codes that the pleader set forth the 'facts' constituting a 'cause of action.'  The substitution of 'claim showing that the pleader is entitled to relief' for the code formulation of the 'facts' constituting a 'cause of action' was intended to avoid the distinctions drawn under the codes ... and eliminate the unfortunate rigidity and confusion surrounding the words 'cause of action.'

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3rd ed.2006). Under federal law, the primary aim of the pleading requirements is to give fair notice to the other party.  Unlike California law, '[a] reading of *Garcia, Conley*, and *Swierkiewicz*, and a host of other cases ... suggests that the complaint, and other relief-claiming pleadings need not state with precision all of the elements that are necessary to give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided to the opposing party.'  *Id.* (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510 ... (2002); *Conley v. Gibson*, 355 U.S. 41, 45-46 ... (1957); *Garcia v. Hilton Hotels Int'l,* 97 F.Supp. 5, 8 (D.P.R.1951).

Despite this tension between notice pleading under Rule 8 and code pleading under

15

California law, the applicable law places the burden on Plaintiffs to plead facts to justify delayed discovery.  Defendant argues that the Amended Complaint does not do this. Defendant refers to documents attached to its Request for Judicial Notice which are documents generated by the local Regional Water Quality Control Board and other governmental entities dating back to the late 1980s and continuing every year to the present.  Defendant asserts:

> The Regional Water Quality Control Board's files were and are available to the public under California's version of the Freedom of Information Act, known as the California Public Records Act. Thus, Plaintiffs had the means of obtaining the knowledge that the events triggering the running of the statute of limitations period had occurred.

Defendant further argues that the Amended Complaint fails with regard to each Plaintiff to allege facts showing that the exercise of reasonable diligence would not have discovered the operative facts at an earlier date:

> [T]hey have fatally pled allegations showing that they were on notice of Defendants' investigation of environmental conditions in the street in front of - and less than 175 feet from - their residences.  Specifically, Plaintiffs allege that Defendant 'installed monitoring wells ... on Blossom Street, North of the facility' (Complaint at 24, p.7:10-11), that these monitoring wells were installed 'near Plaintiffs (and each of them) property" (*Id.* at 24, p.7:21-22), that 'Plaintiffs' homes are located on the north side of Blossom Street' (*Id.* at 1, p.2:3) and that Defendant's property 'is between 50 and 175 feet from [P]laintiffs'

16

yards and homes (*Id.* at 22, p.6:23).  The Complaint thus establishes that the investigation of the alleged contamination was occurring less than 175 feet, and in some cases less than 50 feet, from each and every one of the Plaintiffs' properties.

Defendant also refers to public agency records submitted with the Request for Judicial Notice that in June 1993, Defendant was drilling investigatory wells in Blossom Street near Plaintiffs' homes, blocking traffic lanes in the process.  Defendant argues that, coupled with the other information alleged, "it stretches the limits of credulity for Plaintiffs to assert they were not obligated to exercise reasonable diligence to investigate further."

Plaintiffs respond by noting that in *McKelvey*, the complaints at issue alleged that "'public notices and newspaper articles were published about [Boeing's] intentional, reckless and/or negligent conduct.'" The Court of Appeals held:

In the face of that admission, plaintiffs' conclusory assertion that they 'were and are not [*sic*] aware of the actual and potential harm caused by [Boeing's] conduct' is patently inadequate.  Without resort to the matters submitted to the court for judicial notice, the bottom line is that plaintiffs' amended (and proposed amended) complaints acknowledge the publicity surrounding Boeing's operation of the Rocketdyne facilities, yet nevertheless fail to explain how they managed to ignore those 'newspaper articles.' Other than a general reference to an entire year and an ambiguous reference to an undated report ('the final report of the University of California at Los Angeles' Rocketdyne Worker Health Study'), they have not alleged

17

> *facts* **about the time or manner of
> discovery; discovery despite
> reasonable diligence ...** *They do
> not allege that they did not read,
> hear or see the articles and
> broadcasts they admit were
> published.*

*McKelvey*, *supra,* **74 Cal.App.4th at 161.**

**Plaintiffs argue that Defendant does not
assert widespread publicity about its acts of
contamination and contend that "[m]assive
publicity ... is much different than the mere
existence of documents at a Regional Water
Quality Control Office."  Plaintiffs contend
that they "have not expressly or impliedly
alleged that they were on notice of
Defendant's wrongful conduct before April 8,
2004, when the California Regional Water
Quality Control Board issued a letter ...
notifying the owners of the properties North
of Defendant's facility that contamination
'may have migrated beneath Plaintiffs'
properties."**

**With regard to Defendant's installation of
monitoring wells near Plaintiffs' properties,
Plaintiffs refer to the allegation at
Paragraph 24 of the Amended Complaint that
"'Defendants' did not notify the surrounding
residences and businesses of the presence of
high levels of petroleum hydrocarbons in
areas outside of the 'Defendants' properties"
and did not "attempt to test any area beyond
those monitoring wells installed in 1993
despite having knowledge of the presence of
high levels of petroleum hydrocarbons in the
monitoring wells installed North of
'Defendants' property and near 'Plaintiffs'
(and each of them) property."  Plaintiffs
also refer to the allegation at Paragraph 26:**

> **In November of 2004, 'Defendants'
> began to install the first nested
> wells on all of the herein named
> plaintiffs' properties, and
> monitoring of these wells began on
> December 22, 2004.  Plaintiffs
> therefore had no notice that
> petroleum hydrocarbons existed on**

18

and under their property until
December 22, 2004.

Plaintiffs argue that the April 8, 2004
letter from the CWQCB that "[t]he release of
gasoline and diesel fuel from the property in
past years has impacted the ground water
which now *may* have migrated beneath your
property ..." was the first notice that
Plaintiffs could reasonably have understood
that there could be damage to their
properties.  Plaintiffs contend:

> When one factors in the Tolling
> Agreement, each cause of action
> that Plaintiffs have asserted has
> been filed well within the
> applicable statute of limitations.
> The letter from the California
> Regional Water Quality Control
> Board was sent on April 8, 2004.
> The Statute of Limitations was
> tolled by agreement of the parties
> from April 8, 2005 to September 12,
> 2007.  The Plaintiffs' Complaint
> was filed September 14, 2007;
> therefore, none of Plaintiffs'
> causes of action are barred by the
> Statute of Limitations.

Defendant responds by noting that
constructive notice constitutes notice:
"Plaintiffs concede, in addition to the
environmental investigation and remediation
work that occurred literally in front of
their front doors, there were public records
available from which Plaintiffs could have
known about the alleged contamination as
early as the late 1980s/early 1990s."

There are numerous factual issues involved in
this aspect of the motion to dismiss.  For
example, the testing and drilling on
Defendant's facility and the work done on
Blossom Street - were these actions
publicized as an environmental
investigation/clean up?  When did it become
known to Defendant or the Water Board that
the contaminated ground had possibly migrated
under Plaintiffs' properties?  Defendant's
property could have been contaminated years

19

1    before Plaintiffs' properties.  A review of
     the documents submitted with Defendant's
2    Request for Judicial Notice indicates that,
     other than the April 8, 2004 letter
3    previously quoted, all of the documents
     pertain to contamination at the site, i.e.,
4    Defendant's facility.  Therefore, when each
     Plaintiff discovered their respective injury
5    raises questions of fact.  Plaintiffs allege
     they did not know the purpose of the
6    monitoring wells; what test results were
     achieved; or that they had any duty to
7    inquire about the wells unless and until
     Defendant publically disclosed the purpose of
8    the wells and testing results.

9    Defendant's motion to dismiss based on the
     bar of the statute of limitations and the
10   failure to plead the discovery rule as
     required by California law is GRANTED WITH
11   LEAVE TO AMEND.

12   Defendant argues that the allegations in the SAC do not

13   satisfy the pleading requirements of *McKelvey* as ordered in the

14   Memorandum Decision quoted above.  Defendant complains that the

15   SAC fails to allege facts relative to each plaintiff "showing (a)

16   lack of knowledge; (b) lack of means of obtaining knowledge (in

17   the exercise of reasonable diligence the facts could not have

18   been discovered at an earlier date); (c) how and when he did

19   actually discover the fraud or mistake."  *McKelvey v. Boeing*

20   *North American, Inc.*, 74 Cal.App.4th 151, 160 n.11 (1999).

21   Defendant asserts:

22   Not one single Plaintiff alleges that a
     reasonably diligent inquiry would not have
23   turned up the information.  Not one single
     Plaintiff alleges that they were reasonably
24   diligent under their unique individual
     circumstances.  Yet, that is exactly what is
25   necessary to 'plead the discovery rule as
     required by California law.'

26

20

Defendant contends that the allegations in Paragraph 12 of the SAC do not satisfy these pleading requirements.   Paragraph 12 alleges:

> 12. In November of 2004, "Defendants" began to install the first nested wells on all of the herein named Plaintiffs' properties, and monitoring of these wells began on December 22, 2004. Plaintiffs therefore had no notice that petroleum hydrocarbons existed on and under their property until December 22, 2004. At no time prior to Plaintiff's receipt of the April 8, 2004, letter from the California Regional Water Quality Control Board did any of the Plaintiffs' have any knowledge of any facts which caused them to suspect that anyone may have caused contamination of the soil or groundwater on their property. There was at no time prior to the April 8, 2004, letter from the California Regional Water Quality Control Board any newspaper or other periodical discussing any drilling, monitoring, or other activity on or near Plaintiffs' properties. The Plaintiffs first learned that Defendants were monitoring and testing soil and ground water for contamination when Plaintiffs received copies of the quarterly monitoring reports from the California Regional Water Quality Control Board on or about December 22, 2004. The reports from the California Regional Water Quality Control Board listed all testing and monitoring activities for contamination, at or near Defendant's job site from 1983 to 2004.   The receipts of these reports in late December of 2004, constituted Plaintiffs' first notice of any monitoring activities by Defendants of contamination of Plaintiffs' soil and/or ground water.   None of the Plaintiffs have any knowledge or recollection of any drilling or monitoring of investigatory wells on or near their properties prior to December 22, 2004.

Defendants argue that these allegations "are beside the point":

> When Defendant was monitoring the soil and ground water is irrelevant.   What is relevant is when each Plaintiff *discovered or had some*

21

*reason to be on notice of* the potential
claim.  Surely, notice of monitoring
activities and drilling would have done it -
but that is not the exclusive means by which
each Plaintiff could have made the discovery
(especially through the exercise of
reasonable diligence), and each Plaintiff
glaringly omits to allege when they
discovered their claim.

...

Plaintiffs' failure to allege individually
both diligence and an inability through
diligence to discover the facts necessary to
put them on notice of their claims is not
surprising.  Plaintiffs affirmatively allege
that drilling and monitoring activity was
going on literally in the street in front of
their homes and that the documentation of
those activities was in the possession of a
public agency where it would have been
readily available on the most cursory of
inquiry.  Viewed in this context, the
carefully parsed words of Plaintiffs' 13 new
lines are like a magician's free hand,
intended as a smoke-screen to divert the eye
away from the real issue that must be pled.
Even with the 13 new lines, the allegations
in the [second amended] complaint establishes
that this is not a case where notice needs to
be extrapolated from media reports - this is
a case where the basis for notice and
suspicion was staring the Plaintiffs right in
the face in the small street in front of
their homes and they did absolutely nothing
to inquire about the contamination they
allege has existed for over a decade.
Further, not a single Plaintiff alleges that
the facts shown both by Plaintiff's own SAC
and by Defendant's Request for Judicial
Notice ... that a reasonably diligent effort
would not have located these documents.  Nor
can they make such an allegation.  The
Regional Water Quality Control Board's files
were and are available to the public under
California's version of the Freedom on
Information Act, known as the California
Public Records Act ..., Cal.Gov.Code, § 6250
*et seq.*

22

Plaintiffs argue that *McKelvey* is not on point.  *McKelvey* was a personal injury case against Boeing, with allegations about groundwater contamination at the Southern California Rocketdyne facilities.  The case reached the Court of Appeal on Boeing's successful statute of limitations demurrer.  Boeing's position was, in part, that extensive publicity meant that plaintiffs knew, or as a matter of law could have with diligence discovered the facts essential to their cause of action.  The Court of Appeal affirmed, finding that the complaints failed because they did not allege the time or manner of discovery.  *McKelvey* noted that "the bottom line is that plaintiffs' amended (and proposed amended) complaints acknowledge the publicity surrounding Boeing's operation of the Rocketdyne facilities, yet nevertheless fail to explain how they managed to ignore those 'newspaper articles.' ... *They do not allege that they did not read, hear or see the articles and broadcasts they admit were published.*"  74 Cal.App.4th at 161.  Plaintiffs contend that the holding in *McKelvey* has been "largely superseded" by California Code of Civil Procedure § 340.8:

> (a) In any civil action for injury or illness based upon exposure to a hazardous material or toxic substance, the time for commencement of the action shall be no later than either two years from the date of injury, or two years after the plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later.

1              ...

2              (c) For purposes of this section:

3              ...

4              (2) Media reports regarding the hazardous
               material or toxic substance contamination do
5              not, in and of themselves, constitute
               sufficient facts to put a reasonable person
6              on inquiry notice that the injury ... was
               caused or contributed to by the wrongful act
7              of another.

8    The legislative history of Section 340.8 states:

9              'It is the intent of the Legislature to
               codify the rulings in *Jolly v. Eli Lilly &*
10             *Co.* (1988) 44 Cal.3d 1103, *Norgart v. Upjohn*
               *Co.* (1999) 21 Cal.4th 383, and *Clark v.*
11             *Baxter Healthcare Corp.* (2000) 83 Cal.App.4th
               1048, in subdivisions (a) and (b) of Section
12             340.8 of the Code of Civil Procedure, as set
               forth in this measure, and to disapprove the
13             ruling [in] *McKelvey v. Boeing North*
               *American, Inc.* (1999) 74 Cal.App.4th 151, to
14             the extent the ruling in *McKelvey* is
               inconsistent with paragraph (2) of
15             subdivision (c) of Section 340.8 of the Code
               of Civil Procedure, as set forth in this
16             measure.

17   Plaintiffs further cite *Nelson v. Indevus Pharmaceuticals*, 142

18   Cal.App.4th 1202 (2006).

19       In *Nelson*, a patient who used the prescription diet drug

20   dexfenfluarmine (Fen-phen) brought a personal injury action

21   against the marketer of the drug after the drug was withdrawn

22   from the market based on reports that it could cause heart

23   disease.   The drug manufacturer moved for summary judgment on the

24   ground that the complaint was barred by the statute of

25   limitations based on television and newspaper coverage reporting

26   a connection between Fen-phen and heart disease, news reports

cautioning patients to call their doctors, letters sent by the manufacturer to doctors and pharmacists informing them of the potential association of the drug with heart disease, newspaper ads taken out by the drug manufacturer informing of the drug's withdrawal from the market, and publicity and legal notices concerning a federal court settlement of a class action lawsuit involving Fen-phen.  The trial court granted summary judgment. The Court of Appeal reversed, holding in pertinent part:

> Legally, Indevus relies on leading California discovery rule cases.  For instance, Indevus quotes *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103 ... for the proposition that under the discovery rule, the statute begins to run when 'the plaintiff suspects or *should* suspect that her injury was caused by wrongdoing ...' (*Jolly, supra*, 44 Cal.3d at p. 1110 ...), and cites *Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93 ... for its reference to 'presumptive knowledge,' and a plaintiff's 'opportunity to obtain knowledge from sources open to his investigation ....' (*Id.* at p. 101 ...). Indevus concludes that under California law constructive suspicion is enough.
>
> The quotes are accurate, but they distort the holding of the cases cited, and the conclusion Indevus draws is wrong.  Our Supreme Court has never held that under the discovery rule, the suspicion necessary to trigger the statute may be imputed to a plaintiff, and we do not believe that to be the law.  When the cases are read as a whole, rather than in isolated quotes, it is clear that a plaintiff's duty to investigate does not begin until the plaintiff actually has a reason to investigate.   'A plaintiff has reason to discover a cause of action when he or she "has *reason* at least to suspect a factual basis for its elements." ... ' (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 ... '[W]e look to whether the plaintiffs have *reason* to at least

suspect that a type of wrongdoing has injured them.' ....

The statute of limitations does not begin to run when some members of the public have a suspicion of wrongdoing, but only 'once the plaintiff *has* as suspicion of wrongdoing.' (*Jolly*, *supra*, 44 Cal.3d at p. 1111 ....

An examination of the cases Indevus cites reveals the flaws in its analysis.

*Jolly v. Eli Lilly & Co.* was a DES case.  The plaintiff knew of the DES litigation and believed that DES had caused her injuries, and thus had a suspicion of wrongdoing.  She did not file suit because she did not know who to sue, and the holding of *Jolly* is that the statute was triggered by the knowledge she did have.  She was not held to generally available knowledge.

*Jolly* made the 'should suspect' statement in its discussion of another case, *Kensinger v. Abbott Laboratories* (1985) 171 Cal.App.3d 376 ... *Kensinger* considered the rule that only ignorance of a 'critical fact' can delay the running of the statute, and determined that wrongful conduct was a critical fact, so that 'the statutory clock did not begin to tick until the plaintiff knew or reasonably should have known of the facts constituting wrongful conduct, as well as the fact of her injury and its relation to DES.'  (*Jolly, supra*, 44 Cal.3d at p. 1110 ...).

*Jolly* rejected that holding, and held that 'A plaintiff need not be aware of the specific "facts" necessary to establish the claim; that is a process contemplated by pretrial discovery.  Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.  So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.'  *Jolly, supra*, 44 Cal.3d at p. 1111 ...).

...

26

The Supreme Court recently restated the rule:
'A plaintiff has reason to discover a cause
of action when he or she "has reason at least
to suspect a factual basis for its element."
... In other words, plaintiffs are required
to conduct a reasonable investigation after
becoming aware of an injury, and are charged
with knowledge of the information that would
have been revealed by such an investigation.'
(*Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35
Cal.4th at p. 807 ...).

Indevus's argument amounts to a contention
that, having taken a prescription drug,
Nelson had an obligation to read newspapers
and watch television news and otherwise seek
out news of dangerous side effects not
disclosed by the prescribing doctor, or
indeed by the drug manufacturer, and that if
she failed in this obligation, she could lose
her right to sue.  We see no such obligation.
Instead, 'If a person becomes aware of facts
which would make a reasonably prudent person
suspicious, he or she has a duty to
investigate further and is charged with
knowledge of matters which would have been
revealed by such an investigation.  (*Mangini
v. Aerojet-General Corp.* (1991) 230
Cal.App.3d 1125, 1150 ... A patient who
*actually* learns of the dangerous side effects
of a drug she has taken ignores her knowledge
at her peril, but the law only requires an
investigation when a plaintiff has reason to
investigate.

142 Cal.App.4th at 1206-1208.

Plaintiffs, relying on this authority, argue that Defendant
"is improperly seeking a dismissal based on disputed evidentiary
and factual issues."  Defendant replies that Plaintiffs are
improperly seeking reconsideration of the Memorandum Decision and
denies that it is seeking to resolve factual disputes at the
pleading stage:

Nicoletti wants nothing more than for
Plaintiffs to satisfy the Court's direction

27

that Plaintiffs plead the discovery rule
properly and adequately if they are to bring
these causes of action - which Plaintiffs
have not done, and thus apparently cannot do.
Nicoletti and the Court are entitled to know,
and *each* Plaintiff must plead individually,
the facts showing how *each* Plaintiff acted
diligently and the facts showing that *each*
Plaintiff lacked the means of obtaining the
knowledge as well as when *each* Plaintiff
discovered or had some reason to be on notice
of the potential claims ... It is
understandable that Plaintiffs do all they
can do to avoid pleading facts in conformance
with the discovery rule's pleading
requirements because it appears that it would
be well nigh impossible for each of them to
make an appropriate pleading.  This large
pleading hurdle is especially apparent as the
activities complained of occurred at their
neighbor's, right outside their front doors,
on their small street and in their small
town.

Upon further consideration of the California law,

Plaintiffs' duty to individually plead around the statute of

limitations arises when facts time-barring the complaint are

alleged on the face of the complaint.  There are no specific

facts alleged in the SAC from which if may be inferred that

Plaintiffs' should have discovered that their respective

properties were contaminated by the leakages merely because

Defendant's property was being inspected by environmental

agencies, not Plaintiffs'.  There is no injury to Plaintiffs

until their properties were contaminated.  The SAC alleges that

Plaintiffs were advised in April 2004 that their properties "may

have been contaminated" by the leakages on Defendant's property.

Defendant's position that Plaintiffs should have investigated

whether their properties were contaminated back in 1988 when the

28

environmental agencies began to investigate Defendants and published documents of record about their investigation assumes too much, i.e., that Plaintiffs' properties had already been contaminated.  This is a question of fact, the resolution of which may or may not bring the discovery rule into effect.   In *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir.1995), the Ninth Circuit explained:

> ... A defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred ... Thus, the defendant has the burden of demonstrating the complained of wrongdoing *and* harm occurred outside the limitation period.
>
> ...
>
> The 'discovery rule,' on the other hand, assumes that the elements of accrual including harm exist, but tolls the ruling [sic] of the statute of limitations until the plaintiff is on inquiry notice of its injury ... All parties agree that the burden is on Sansome to plead and prove the facts necessary to toll the limitations period once it is established that it would have otherwise commenced.

Defendant's position assumes that the contamination to Plaintiffs' properties occurred outside the limitations period. This requires a fate and transport scientific analysis of when the plume reached Plaintiffs' properties to cause contamination, which is unknown and cannot be determined at the pleading stage.

At the hearing, Plaintiffs represented that they have learned of recent discharges of contaminants onto their properties and seek leave to amend the complaint to include these

29

1   allegations.

2        Given these representations, the motion to dismiss on this

3   ground is GRANTED WITH LEAVE TO AMEND to permit Plaintiffs to

4   allege they had no knowledge and could not reasonably have known

5   about historic contamination and the recent damage to their

6   properties.

7                  3.   Fourth Cause of Action for Fraud - Concealment.

8        The Fourth Cause of Action, after incorporating the

9   preceding allegations, alleges:

10              41. At various times beginning in at least
                1988 and continuing through April 8, 2004,
11              "Defendants" and each of them knew of the
                presence of contaminants on said defendants'
12              property and on property north of their
                "storage facility." "Defendants," and each of
13              them, through their own monitoring discovered
                dangerous levels of hydrocarbons in the soil
14              and subadjacent ground water in wells dug on
                Blossom Street and other areas surrounding
15              said defendants' "storage facility."

16              42. Despite high readings for benzene,
                tuolene, xylenes and other carcinogenic
17              substances, "Defendants" and each of them
                performed no new tests and made no effort to
18              clean up the contamination said defendants
                had discovered. "Defendants" and each of
19              them, further, made no efforts to contact any
                homeowners or persons living near the
20              "storage facility" regarding their findings,
                until required to by the California Regional
21              Water Quality Board in April 2004.
                Defendants owed a duty to the public,
22              including the Plaintiffs, under California
                law, to disclose any known contamination of
23              Plaintiffs' properties known to have been
                caused by contaminants used, controlled, and
24              released by Defendants.

25              43. "Defendants" and each of them, by their
                actions, and/or omissions, knowingly and/or
26              intentionally failed to disclose said

                                30

important fact, that was known only to said
defendants, and said fact was one that the
Plaintiffs herein described, could not have
reasonably discovered.

44. Plaintiffs and each of them had no reason
to suspect that a petroleum hydrocarbon plume
existed under or near their respective
properties until April 13, 2004 at the
earliest when the first plaintiff received
notice from the Regional Quality Control
Board of the potential for existence of
petroleum hydrocarbons under Plaintiffs' and
each of their properties. Plaintiffs and each
of them did not know of the actual existence
of dangerous hydrocarbons in their soil and
in the subadjacent groundwater until
monitoring wells were installed in November
and December of 2004 on Plaintiffs'
respective properties.

45. "Defendants" and each of them intended to
deceive Plaintiffs and each of them by
concealing the fact that said defendants knew
of the existence of petroleum hydrocarbons
located off the "storage facility," that the
petroleum hydrocarbon plume migrated from
said defendants' "storage facility," that the
said product had migrated north from the
"storage facility" on a path which a
reasonable person would believe would migrate
onto Plaintiff's and each of their property,
that said defendants had discovered large
amounts of petroleum in the wells dug north
of the "storage facility," which would lead a
reasonable person to believe that said
contaminants had migrated onto, into and/or
under said Plaintiffs' properties.

46. Plaintiffs and each of them reasonably
relied on the belief that "Defendants" and
each of them were operating their plant
and/or "storage facility" in a safe and
reasonable fashion, and that no danger
existed to said Plaintiffs. Plaintiffs also
relied on the belief that said defendants
would notify said Plaintiffs if said
defendants believed that petroleum
hydrocarbons had leaked and migrated onto the
said Plaintiffs' property. Plaintiffs and
each of them were harmed as alleged in the

31

allegations above and hereinafter.

47. "Defendants," and each of their concealment of the existence of the contamination on, under and near each of said Plaintiffs' property was a substantial factor in causing Plaintiffs and each of them, harm.

48. The conduct of said defendants in actively concealing and/or suppressing the fact that gasoline, diesel fuel, aviation fuel, and other petroleum hydrocarbons leaked from underground and aboveground storage tanks and supply lines on the "storage facility" and had migrated onto, into and/or under and thereby contaminated the soil on the Plaintiffs' and each of their property and the groundwater thereunder, demonstrates said defendants willful and conscious disregard for the rights and safety of others. Plaintiffs, and each of them, are therefore entitled to recover punitive damages from said defendants in an amount sufficient to deter similar activity in the future.

49. As a substantial, legal and/or proximate result of the concealment of the contamination on Plaintiffs', and each of their property caused by said defendants, Plaintiffs and each of them  have been injured, incurring the costs and suffering the damages alleged in paragraphs 1 through 61 above.

50. "Defendants," and each of them, acted with malice, oppression and/or fraudulent intent because said defendants' conduct was despicable and was carried out with willful and/or conscious disregard of said Plaintiffs' rights and/or safety and that said defendants knew of petroleum hydrocarbons, knew that the petroleum hydrocarbons had migrated off of their property, and that the petroleum hydrocarbons had migrated near said Plaintiffs' properties.  Despite this fact, said defendants failed to alert or notify any of the said Plaintiffs that the potential existed for petroleum hydrocarbons to be in and/or under said Plaintiffs' soil, despite

32

the fact that said defendants and each of
them knew of the existence of these
hydrocarbons for over 10 years prior to
disclosure.

In the Memorandum Decision, Defendant moved to dismiss the

cause of action for fraud on the ground that Plaintiffs had not

alleged any fiduciary relationship or transaction between

Defendant and Plaintiffs that would give rise to a duty to

disclose.  The Court ruled:

> Plaintiffs concede that, ordinarily, a
> failure to disclose material facts is not
> actionable fraud unless there is some
> fiduciary relationship giving rise to a duty
> to disclose.  However, Plaintiffs contend
> "'[t]he duty to disclose may arise without
> any confidential relationship where the
> defendant alone has knowledge of material
> facts which are not accessible to the
> plaintiff.'" *Magpali v. Farmers Group, Inc.*,
> 48 Cal.App.4th 471, 482 (1996).  In addition,
> Plaintiffs contend, "[e]ven if a fiduciary
> relationship is not involved, a nondisclosure
> claim arises when the defendant makes
> representations but fails to disclose
> additional facts which materially qualify the
> facts disclosed, or which render the
> disclosure likely to mislead." *Roddenberry
> v. Roddenberry*, 44 Cal.App.4th 634, 666
> (1996).

> Relying on these principles, Plaintiffs
> assert that they have alleged that Defendant
> possessed knowledge about its wrongful acts
> of contamination, affecting nearby landowners
> and that Plaintiffs did not possess such
> knowledge.  Plaintiffs further assert that
> they have alleged they reasonably relief upon
> their belief that Defendant was operating the
> storage facility in a safe manner and that no
> danger existed to Plaintiffs or their
> properties.

> The Fourth Cause of Action does not state a
> claim upon which relief can be granted.
> Plaintiffs have not and cannot allege that

1
2
3
4
5
6
7
8
9
10

> Defendant alone has knowledge of material
> facts which were  not accessible to the
> Plaintiffs.  From the documents submitted
> with Defendant's Request for Judicial Notice,
> both the Merced County Department of Public
> Health and the Regional Water Quality Control
> Board were aware of the information that
> petroleum hydrocarbons were leaking at the
> storage facility and ultimately were aware
> that they may have migrated under Plaintiffs'
> properties.  Plaintiffs have not alleged any
> affirmative  misrepresentation by Defendant;
> they only allege their belief that Defendant
> "would" operate the storage facility in a
> safe manner.  This does not implicate a duty
> to disclose.  No claim for concealment or
> fraud has been stated.  The motion to dismiss
> the Fourth Cause of Action is GRANTED WITH
> LEAVE TO AMEND.

11   Defendant asserts that the only additional allegation to the

12  fraud-concealment cause of action in the SAC is the allegation in

13  paragraph 42 that "Defendants owed a duty to the public,

14  including Plaintiffs, under California law, to disclose any known

15  contamination of Plaintiffs' properties known to have been caused

16  by contaminants used, controlled, and released by Defendants."

17   Plaintiffs concede that this cause of action is not based on

18  any affirmative representation or misrepresentation by Defendant;

19  rather, the cause of action is based on suppression of

20  information, *i.e.,* omission to disclose.  It is unnecessary to

21  discuss dismissal for direct representation or misrepresentation.

22   California Civil Code § 1710(3) defines "deceit" as "[t]he

23  suppression of a fact, by one who is *bound* to disclose it ...."

24   Defendant argues that the SAC does not allege any acts by

25  Defendant to restrict or prevent Plaintiffs' access to publically

26  available information contained in the files and records of the

34

Merced County Department of Public Health and the Regional Water Quality Control Board.  Defendant complains that, rather than alleging facts demonstrating active suppression or intent to defraud, Plaintiffs "resort to prohibited conclusory allegations."   Defendant notes that the SAC does not allege that the Merced County Department of Public Health and the Regional Water Quality Control Board were unaware of the same information concerning site conditions as Defendant or that these entities possessed that information at approximately the same time as Defendant.  Defendant argues:

> [T]he reason for these glaring omissions is simple: commencing with the very day the contamination at issue in this case was discovered, as indicted by the July 27, 1988 ... Underground Storage Tank Unauthorized Release (Leak) Contamination Site Report by the Merced County Department of Health, and continuing to this day, the Regional Water Quality Control Board and the Merced County Department of Public Health did in fact possess the information Plaintiffs allege that Defendant possessed.

Defendants point to the absence of allegations in the SAC that Merced County Department of Public Health and the Regional Water Quality Control Board were uninformed, required notifications that were not given, or required investigation or remediation that was not performed.

Plaintiffs respond that the SAC alleges that Defendant knowingly concealed knowledge of the leakage from its facilities onto Plaintiffs' properties and that these allegations suffice to state a claim for fraud based on the suppression of facts which

1  Defendant had a duty to disclose.

2       Defendant responds that there is no duty imposed by

3  California law requiring Defendant to disclose to the public,

4  including Plaintiffs, any known contamination of Plaintiffs'

5  properties.

6       Plaintiffs have not provided legal authority that an

7  affirmative duty of disclosure exists in the absence of a

8  relationship between the parties.  At the hearing, Plaintiffs

9  represented that they recently learned of fresh discharges of

10 contaminants onto their properties and seek leave to amend to

11 include these allegations.

12      Leave to amend is required by Rule 15 to be freely granted

13 where justice so requires.  Although the absence of any

14 allegation from which it may be inferred that Defendant had any

15 legal duty, obligation, or relationship with Plaintiffs requiring

16 disclosures to any of the Plaintiffs is troubling and may well be

17 fatal to this cause of action, the motion to dismiss this cause

18 of action is GRANTED WITH LEAVE TO AMEND.

19            **4.   Seventh Cause of Action for Unlawful Business**

20 **Practice**.

21      The Seventh Cause of Action is for unlawful business

22 practice in violation of California Business & Professions Code

23 §§ 17200 *et seq*.

24      After incorporating all preceding allegations, the Seventh

25 Cause of Action alleges:

26            69. California Business & Professional Code

§17200 et. seq. provide that "unfair competition shall mean and include any unlawful, unfair, and fraudulent business practice.

70. "Defendants," and each of them, did engage in and continue to engage in the practice of intentionally, willfully and wantonly operating their bulk fuel storage facility despite knowing as early as 1988 or before that there was ongoing leakage at said facility and that said leak was substantial enough to cause large amounts of highly toxic chemicals to leak into the soil and subadjacent groundwater. "Defendants" and each of them persisted and continue to persist in this practice to the present time.

71. "Defendants" and each of them concealed the fact that petroleum hydrocarbons had begun to leak into the soil and groundwater around the "storage facilities" in the 1970's and 1980's. After said defendants started performing tests and maintaining records in approximately 1988, said defendants knew or should have known, that based on the sheer amount of petroleum hydrocarbons in the soil and groundwater the contamination had most certainly migrated off of the "storage facility" premises. By the time said defendants started conducting tests off of the "storage facilities" site in 1993, defendants and each of them knew of the large amounts of petroleum hydrocarbons present in the adjacent soil, yet failed to notify surrounding residents of the potential danger.

72. "Defendants" actions violated state law; said violations resulted in an illegal competitive advantage for Defendants, in that "Defendants" and each of them operated their facility with knowledge that said facility was leaking petroleum hydrocarbons into the soil and groundwater surrounding the facility. "Defendants" and each of them operated the facility in a manner, which provided "Defendants" and each of them an illegal competitive advantage over other fuel storage facilities in the area and the rest of the state, who were required to follow the

law and to repair leaks and perform cleanup
operations in a timely manner at their
facility. Said illegal competitive advantage
resulted in additional income, revenues
and/or profits for "Defendants" and each of
them, which were gained as a result of said
illegal activity by Defendants, in an amount
to be determined at trial, and in excess of
this courts jurisdictional minimum.

73. Plaintiffs and each of them have suffered
and continue to suffer irreparable harm from
exposure to dangerous petroleum hydrocarbons.

74. An action for restitution and
disgorgement under the Unfair Competition Act
is specifically authorized by Business &
Professional Code §17203. Moreover,
attorney's fees are authorized under Business
& Professions Code 17200 et.seq.

Defendants move to dismiss this cause of action because the
SAC does not specify whether Defendants have engaged in an
unlawful, unfair or fraudulent business practice.  Defendants
contend that the allegations in Paragraph 72 that "'Defendants'
actions violated state law; said violations resulted in an
illegal competitive advantage for Defendants, in that
'Defendants' and each of them operated their facility with
knowledge that said facility was leaking petroleum hydrocarbons
into the soil and groundwater surrounding the facility" are
conclusory because the SAC fails to specify what law was
violated.  Defendants assert that the allegations in Paragraph 72
"is far too ambiguous to state a claim."  Defendants also contend
that the allegations in Paragraph 71 that Defendants failed to
notify surrounding residents of the potential danger,
characterized by Defendants as "fraudulent concealment", *see*

38

*discussion infra*, cannot proceed:

> To allege concealment in the face of their own allegations and judicially noticeable documentation that multiple governmental agencies were informed of the very actions that Plaintiffs claim were concealed is inconsistent with the standards for Federal pleading and this allegation should also be stricken.

Plaintiffs note that Section 17200 defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice ...."   Plaintiffs cite *People v. E.W.A.P. Inc.*, 106 Cal.App.3d 315, 318-319 (1980):

> Since the addition of the word 'unlawful' ..., this section has been liberally construed so as not to be limited to traditional anticompetitive practices ... Our Supreme Court has stated that the purpose of the amendment was to 'extend the meaning of unfair competition to anything that can properly be called a business practice and that at the same time is forbidden by law.'

Plaintiffs also cite *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838-839 (1994):

> The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made ... It is not necessary that the predicate law provide for private civil enforcement ... As our Supreme Court put it, section 17200 'borrows' violations of other laws and treats them as unlawful business practices independently actionable under section 19722 et seq. ... 'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing members of the public '"are likely to be deceived."' ....

Plaintiffs argue that "[w]hether a business act or practice

39

constitutes unfair competition within Section 17200 is a question of fact." *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,* 178 F.Supp.2d 1099, 1117 (C.D.Cal.2001), citing *Payne v. United California Bank*, 23 Cal.App.3d 850, 856 (1972).

Relying on these cases, Plaintiffs argue that the SAC alleges that Defendants have violated state law, resulting in an illegal competitive advantage for Defendants and that Defendants concealed the fact that they were responsible for the leakage into Plaintiffs' groundwater and failed to warn Plaintiffs of that tortious, harmful conduct. Plaintiffs contend that these allegations, when liberally construed, suffice to state a claim for violation of Section 17200. At the hearing, Plaintiffs represented that Defendant is not complying with the remediation order issued by the California Regional Water Quality Control Board and seeks leave to amend to include this allegation.

Defendants assert in a footnote that Plaintiffs' allegation in Paragraph 74 that "[a]n action for restitution and disgorgement ... is specifically authorized by Business & Professions Code § 17300" is "unsupported by the SAC." Defendants' assertion was rejected in the Memorandum Decision:

> Defendants further move to dismiss the Seventh Cause of Action to the extent that the Seventh Cause of Action seeks restitution as a remedy. Defendant cites *State v. Altus Finance, S.A.,* 36 Cal.4th 1284, 1304 (2005): "A UCL claim for restitution seeks to compel 'defendant[s] to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those

40

claiming through that person.' ...."
Defendants note that Plaintiffs have not
alleged that Defendant ever obtained
Plaintiffs' money or that Plaintiffs ever had
an ownership interest in any of the
defendants' profits.

At the hearing, Plaintiffs explained that
their theory underlying the Seventh Cause of
Action is that Defendant operated at a
competitive advantage over other oil
companies, which resulted in a greater profit
to Defendant.  Defendant complained that
Plaintiffs cite no case to support their
theory.

In *Kraus v. Trinity Management Services,
Inc.*, 23 Cal.4th 116, 127 (2000), the
California Supreme Court commented:

> An order that a defendant disgorge
> money obtained through an unfair
> business practice may include a
> restitutionary element, but is not
> so limited ... [S]uch orders may
> compel a defendant to surrender all
> money obtained through an unfair
> business practice even though not
> all is to be restored to the
> persons from whom it was obtained
> or those claiming under those
> persons.  It has also been used to
> refer to surrender of all profits
> earned as a result of an unfair
> business practice regardless of
> whether those profits represent
> money taken directly from persons
> who were victims of the unfair
> practice.

*Kraus* provides arguable authority supporting
Plaintiff's theory of restitution.

For the reasons previously stated in the Memorandum

Decision, Defendant's motion to dismiss the Seventh Cause of

Action is DENIED on this ground; otherwise the motion to dismiss

the Seventh Cause of Action is GRANTED WITH LEAVE TO AMEND.[1]

B.  <u>MOTION TO STRIKE</u>.

Defendant moves pursuant to Rule 12(f), Federal Rules of Civil Procedure, to strike the following allegations from Paragraphs 14, 31, and 37 of the SAC

> ... In fact, Defendant's [sic] represented to the California Regional Water Quality Control Board, in the later part of 2005, and early 2006, that the remediation of the contamination of properties currently owned by Plaintiffs would not be substantially completed for five to ten years.  The contamination of properties currently owned by Plaintiffs will therefore continue, by Defendant's own admissions, to at least 2010 to 2015.

Defendants argue that these allegations should be stricken because the SAC "shows, on the face of a document attached to and incorporated by reference into the Second Amended Complaint as Exhibit A thereto, that the purported representations of Defendant were actually made by and on behalf of independent third parties not affiliated with Defendant."

Plaintiffs respond that Defendant's "representations to the California Regional Water Quality Control Board as to the length of time necessary to remediate Defendant's contamination of Plaintiffs' properties ... are relevant and significant to Plaintiffs' contentions that Defendant's conduct is a continuous trespass, nuisance, and is negligent."

Exhibit A to the SAC is a Site Assessment Report prepared

---

[1]It is unnecessary to address Defendant's motion to dismiss the prayer for punitive damages.

42

for ExxonMobil Oil Corporation by TRC Customer-Focused Solutions. The parties do not appear to be discussing the same document. Exhibit A also appears to be redacted or edited.  Because the SAC is dismissed in part with leave to amend, Plaintiffs, if they refer to Exhibit A in the Third Amended Complaint, should attach a true and complete copy of that document.

Defendant moves to strike the word "only" from "paragraph 43, page 11:25".  Paragraph 43 alleges that "'Defendants' ... intentionally failed to disclose said important fact, that was known only to defendants ...."  Defendant refers to the Memorandum Decision:

> The Fourth Cause of Action does not state a claim upon which relief can be granted. Plaintiffs have not and cannot alleged that Defendant alone has knowledge of material facts which were not accessible to Plaintiffs.  From the documents submitted with Defendant's Request for Judicial Notice, both the Merced County Department of Public Health and the Regional Water Quality Control Board were aware of the information that petroleum hydrocarbons were leaking at the storage facility and ultimately were aware that they may have migrated under Plaintiffs' properties.

Plaintiffs respond that Defendant is arguing disputed evidentiary matter and that Plaintiffs have a right to plead and prove their case as they deem to be necessary and appropriate.

Defendant moves to strike the first sentence of Paragraph 71 of the SAC: "'Defendants' and each of them concealed the fact that petroleum hydrocarbons had begun to leak into the soil and groundwater around the 'storage facilities' in the 1970's and

1980's."  Defendant bases this aspect of the motion to strike on their contention that the SAC does not state a claim for fraudulent concealment.  *See discussion infra*.

Because the fraudulent concealment cause of action is dismissed with leave to amend, the motion to strike on this ground is DENIED.

### CONCLUSION

For the reasons stated:

1.  Defendant's motion to dismiss and to strike the Second Amended Complaint is DENIED IN PART AND GRANTED IN PART WITH LEAVE TO AMEND;

2.  Plaintiffs shall file a Third Amended Complaint within 30 days of the filing date of this Memorandum Decision and Order.

IT IS SO ORDERED.

Dated: __May 28, 2008__        _____/s/ Oliver W. Wanger_____
                                UNITED STATES DISTRICT JUDGE