IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BONDS, et al.,<br><br>           Plaintiffs,<br><br>    vs.<br><br>NICOLETTI OIL INC., et al.,<br><br>           Defendants. | No. CV-F-07-1600 OWW/DLB<br><br>MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT WITH EXXON MOBIL CORPORATION (Doc. 47) AND VACATING ORAL ARGUMENT SET FOR MONDAY, SEPTEMBER 8, 2008 |

    Plaintiffs move for determination of the good faith of their settlement with non-party Exxon Mobil Corporation.

    No opposition to the motion has been filed within the time required by Rule 78-230(c), Local Rules of Practice.

    California Code of Civil Procedure § 877 provides:

> Where a release, dismissal with or without prejudice, or a covenant not to due ... is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort ..., it shall have the following effect:
>
>     (a) It shall not discharge any

1

> other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater.
>
> (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.
>
> ...

California Code of Civil Procedure § 877.6 provides:

> (a)(1) Any party to an action in which it is alleged that two or more parties are joint tortfeasors ... shall be entitled to a hearing on the issue of the good faith settlement entered into by the plaintiff ... and one or more of alleged tortfeasors ..., upon giving notice in the manner provided in subdivision (b) of Section 1005 ....
>
> ...
>
> (b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response, or the court may, in its discretion, receive other evidence at the hearing.
>
> (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor ... from any further claims against the settling tortfeasor ... for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.
>
> (d) The party asserting the lack of good faith shall have the burden of proof on that issue.
>
> ...

Sections 877 and 877.6 permit a settling tortfeasor to buy his peace and extricate himself from pending litigation without fear of future contribution or indemnification claims by non-settling joint tortfeasors.  *In re Nucorp Energy Securities Litigation*, 661 F.Supp. 1403, 1410 (S.D.Cal.1987).

In *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 38 Cal.3d 488, 499 (1985), the California Supreme Court set forth a number of factors to be considered by the court in determining whether a settlement is in good faith:

> 1.  A rough approximation of plaintiffs' total recovery and the settlors' proportionate liability;
>
> 2.  The amount paid in settlement;
>
> 3.  The allocation of settlement proceeds among plaintiffs;
>
> 4.  A recognition that the settlor should pay less in settlement than he would if he were found liable after trial;
>
> 5.  The financial conditions and insurance policy limits of settling defendants; and
>
> 6.  The existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants.

Practical considerations require that the evaluation be made on the basis of information available at the time of the settlement. *Id.*.  Finally, a defendant's settlement may not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.  *Id.*  In *City of Grand Terrace v. Superior Court*, 192 Cal.App.3d 1251, 1261 (1987), the Court of Appeals stated:

> This court notes that of the hundreds of motions for good faith determination presented for trial court approval each year, the overwhelming majority are unopposed and granted summarily by the trial court. At the time of filing in many cases, the moving party does not know if a contest will develop. If each motion required a full recital by declaration or affidavit setting forth a complete factual response to all of the *Tech-Bilt* factors, literally thousands of attorney hours would be consumed and inch-thick motions would have to be read and considered by trial courts in an exercise which would waste valuable judicial and legal time and clients' resources. It must also be remembered that *Tech-Bilt* was decided on a contested basis. We are unaware of any reported decision which has reversed and *uncontested* good faith determination and we, therefore, conclude that only when the good faith nature of a settlement is disputed, it is incumbent upon the trial court to consider and weigh the *Tech-Bilt* factors. That is to say, when no one objects, the barebones motion which sets forth the ground of good faith accompanied by a declaration which sets forth a brief background of the case is sufficient.

Plaintiffs Larry Bonds, Gayle Bonds, Jesus Aguilar, Joe Anderson, Rose Anderson, Jim Ballanger, Jeanie Ballanger, Charles Bates, Loretta Bates, Pedro Bermudez, Hortencia Bermudez, Linda Butler, Gloria Cardenas, Thomas M. Climer, David Darnell, Felix Esquivel, Delia Esquivel, Pablo Martinez, Ezequivel Ortega, Joe Ortega, Hope Ortega, Bobby Parson, and Jeff Sullivan brought this action against Nicoletti Oil Inc. and Does 1-100. Plaintiffs allege that releases of petroleum products at bulk fuel storage/retail fuel dispensing facility in Dos Palos, California, owned and operated by Nicoletti Oil Inc. since purchasing the facility from Exxon Mobil Corporation in 1980, have resulted in

contamination of the soil and groundwater at the facility which has migrated under the residential properties owned by Plaintiffs.

The Declaration of Eric W. Chaudron, counsel for Plaintiffs, filed in support of the motion for determination of good faith settlement avers:

> 2. I have been the principal representative for Plaintiffs in this matter since being retained in July of 2004, shortly after residents were informed by the Regional Board (in April 2004) of releases at the Nicoletti site which could potentially impact their properties.
>
> 3. I have made numerous contacts with counsel for Defendant Nicoletti Order Inc. as well as counsel for Exxon-Mobil Corporation (former owner of the Nicoletti site). Those contacts centered initially on efforts to get those parties to test, monitor, investigate and remediate the petroleum contamination migrating from the Nicoletti site onto the Plaintiffs' properties. However, later discussions centered on negotiations for damages for Plaintiffs.
>
> 4. Nicoletti Oil Inc. has owned and operated the facility at the present site since 1980. ExxonMobil (whose predecessor Mobil Oil owned the site) has not owned or operated the facility currently housing Nicoletti Oil since 1980.
>
> 5. Plaintiffs made their initial demand against Nicoletti Oil and ExxonMobil in early 2006. Plaintiffs received their first counter-offer to their demands from ExxonMobil's counsel on June 27, 2006.
>
> 6. Since receiving and rejecting this offer from ExxonMobil, Plaintiffs have attempted on numerous occasions to secure a global settlement with all potential tortfeasors.
>
> 7. In addition to ExxonMobil's initial cash

offer for general damages, including pain, suffering and inconvenience, ExxonMobil also established a fair market value-based price protection program ('PPP') for homeowners. Under this program, ExxonMobil supports a homeowner who wishes to sell their house, by paying the difference between the appraised fair market price and the sale price obtained, or by purchasing the home outright, if it does not sell after six months on the market. This is a voluntary program which will remain in place through October 2011, and is not contingent upon any other settlement by the parties.

8. After receiving ExxonMobil's initial settlement offer, Plaintiffs continued their efforts to reach a global settlement.

9. On April 25, 2007, Plaintiffs' counsel, defendant Nicoletti and ExxonMobil and counsel, along with some or all of Nicoletti's insurers, held a joint meeting at the offices of Nicoletti's counsel, in Los Angeles. At the meeting Plaintiffs' counsel made a reasonable and appropriately discounted offer to settle the general damages portion of the case, if and only if settlement could be reached prior to the commencement of litigation. Plaintiffs arrived at this pre-litigation settlement figure after discussions with environmental consultants, as well as other counsel in this area with expertise in environmental litigation.

10. Following the April 25, 2007 meeting, ExxonMobil continued to discuss cash settlement options, consistent with Plaintiffs' pre-litigation settlement figures. Nicoletti continued discussion to a degree, but made no offer of settlement.

11. On September 14, 2007, plaintiffs filed this action. Defendant, Nicoletti Oil removed the case to the Federal Court. Plaintiffs filed a Motion to Remand. On January 14, 2008, the Court heard plaintiffs' Motion to Remand and denied the Motion. Defendant's [sic] filed a Motion to Dismiss under FRCP 12b(6) [sic]. The Court granted

>the Motion in part and denied it in part with leave to amend. Plaintiffs then filed a Second Amended Complaint on March 12, 2008. Defendants filed a second 12b(6) [sic] Motion to Dismiss that was granted in part and denied in part with leave to amend. Plaintiffs will file a Third Amended Complaint by July 1, 2008.[1]
>
>12. Given the ongoing settlement discussions with ExxonMobil at the time, Plaintiffs decided not to name ExxonMobil in the lawsuit.
>
>13. On or about April 8, 2008, counsel for ExxonMobil and Plaintiffs reached an agreement in principle to resolve ExxonMobil's portion of the case for the following amounts: $52,500.00 for each of the residents, $42,500 for each non-resident landlord, $35,000 for one non-residential property owner, plus $150,000 towards counsel's costs and fees - for a total cash settlement amount of $890,000. Said figure is for general damages. In addition, each Plaintiff will continue to have the option to participate in the Price Protection Plan through October 2011.
>
>14. To date, defendant, Nicoletti Oil, has made no offer to Plaintiffs to resolve this case. Neither have they offered to pay for the clean up of the site, instead relying on ExxonMobil to pay the costs of monitoring, testing and remediation.

Attached to Plaintiffs' motion is a copy of the Settlement Agreement between Plaintiffs and ExxonMobil. The Settlement Agreement provides:

>This Agreement is entered into with reference to the following facts:

---

[1] Since Plaintiffs' motion to determine good faith settlement was filed, Plaintiffs have filed a Fourth Amended Complaint pursuant to stipulation of the parties. Nicoletti Oil has filed a motion to dismiss the Sixth Cause of Action of the Fourth Amended Complaint, which motion is set for hearing on November 3, 2008.

7

**A.  The Parties hereto seek to discharge, release and resolve all existing and/or potential claims that Claimants [Plaintiffs] may have against ExxonMobil relating to the alleged subsurface release and migration of petroleum hydrocarbons from a bulk terminal and retail fuel distribution facility located at 2801 Blossom street, Dos Palos, California ('Site'), including personal injury or property damage (the 'Claims').  ExxonMobil, via predecessor entity, Mobil Oil Corporation ('Mobil Oil') owned and operated the Site from the 1950's to 1980.  For over 27 years (from 1980 to the present) the Site had been owned and operated by Nicoletti Oil, Inc. ('Nicoletti').**

**B.  Claimants allege that they have suffered damages as a result of the migration of contaminants from the Site into the neighboring residential area in which their homes are located (the 'Residential Area').**

**C.  Evidence of a subsurface release of petroleum hydrocarbons was first identified at the Site in 1988, by Nicoletti, in the course of removing an underground storage tank, approximately 8 years after Mobil Oil vacated the Site.  The Parties are aware of no contemporaneous report or regulatory record of any release at the Site prior to 1988.**

**D.  On February 3, 2005, former owner, ExxonMobil, and current owner, Nicoletti, were both named as 'dischargers' in Central Valley Regional Water Quality Control Board ('RWQCB') Cleanup and Abatement Order No. R5-2005-0701 (the 'Initial CAO'), pursuant to California law.  The Initial CAO required the parties to conduct extensive investigation and interim remedial activities relating to contamination at, under, and emanating from the Site, to confirm and sustain the health and safety of those in the Residential Area.  This initial [sic] CAO was superseded in June of 2006, by another CAO (No. R5-2006-0057)('Current CA0') [sic], which also names ExxonMobil and Nicoletti as dischargers.  Current CAO ordered extensive remediation of contamination at, under, above and emanating**

from the Site and specified the operation and monitoring requirements governing remedial activities through completion of remediation.

E.   To date, ExxonMobil has complied in all material respects with the requirements of the RWQCB and the CAOs, and intends to continue to comply with all RWQCB orders regarding remediation of the Site.  To the Parties' knowledge, Nicoletti had not participated in or contributed financially or otherwise to the remediation of the contamination at, under, above, and/or emanating from the Site, as required in the CAOs.

F.   On November 10, 2005, Claimants issued an initial demand letter (which was subsequently supplemented as Claimant group expanded) to ExxonMobil and Nicoletti, asserting a substantial demand for multiple claims, including *inter alia*, claims for nuisance, trespass, property damage, personal injury, diminution in value and emotional distress, as well as legal and other experts' fees and expenses for the matter.  Since that time, Claimants and ExxonMobil have engaged in good faith arm's length negotiations regarding the satisfaction and settlement of Claimants' demands.

G.   On November 1, 2006, in response to Claimants' specific concerns regarding the marketability of their homes as a result of contamination from the Site, ExxonMobil initiated and extended to 21 households in the Residential Area (including Claimants), a voluntary Price Protection Program ('PPP').

H.   In September 2007, Plaintiffs filed a Complaint against Nicoletti, which is currently pending (as amended) in the United States District Court for the Eastern District of California, CASE NO.:1:07-CV-01600-OWW-DLB, *Bonds et al v. Nicoletti Oil, Inc.* (the 'Lawsuit').  Claimants did not name ExxonMobil as a defendant in the Lawsuit.  The Parties now seek to enter into this Settlement Agreement and to obtain a Determination of Good Faith Settlement by the Court.  The Parties further intend that the

>           the terms of this Settlement Agreement shall
>           not take effect, unless and until the Court
>           makes such a Determination of Good Faith
>           Settlement.
>
>           I.   The Parties how wish to settle all of
>           Claimants' claims against ExxonMobil.
>           Nothing in this Settlement Agreement shall be
>           construed as an admission by any other Party
>           of any fault or liability of any kind.

The Settlement Agreement then recites the terms of payment to the Plaintiffs outlined in Mr. Chaudron's Declaration and various other terms and conditions.

   Plaintiffs' motion for determination of good faith settlement with ExxonMobil Corporation is GRANTED and the settlement concluded between Plaintiffs and ExxonMobil is found to be in good faith within the meaning of California Code of Civil Procedure § 877.6.  Because no opposition to the motion has been filed, pursuant to *City of Grand Terrace v. Superior Court*, *supra*, the *Tech-Bilt* factors are not considered or weighed.

   Oral argument set for September 8, 2008 is VACATED.

   IT IS SO ORDERED.

Dated:   September 3, 2008            /s/ Oliver W. Wanger
                                    UNITED STATES DISTRICT JUDGE