UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BONDS, *et al.*, | 1:07-CV-1600 OWW DLB |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| v. | PLAINTIFFS' SIXTH CAUSE OF ACTION IN THE FOURTH AMENDED COMPLAINT (DOC. 55) |
| NICOLETTI OIL, INC., *et al.*, | |
| Defendants. | |

## I.  INTRODUCTION

Before the court for decision is Defendant Nicoletti Oil's motion to dismiss the sixth cause of action in the fourth amended complaint (Doc. 55), as well as Defendant's request for judicial notice (Doc. 55-2).

## II.  BACKGROUND

Plaintiffs Larry Bonds, Gayle Bonds, Jesus Aguilar, Joe Anderson, Rose Anderson, Jim Ballanger, Jeanie Ballanger, Charles Bates, Loretta Bates, Pedro Bermudez, Hortencia Bermudez, Linda

1

Butler, Gloria Cardenas, Thomas M. Climer, David Darnell, Felix Esquivel, Delia Esquivel, Pablo Martinez, Ezequivel Ortega, Joe Ortega, Hope Ortega, Bobby Parsons, and Jeff Sullivan filed a Fourth Amended Complaint ("FAC") against Nicoletti Oil Inc. and Does 1-100.  (Doc. 54, filed August 11, 2008.)  The FAC alleges that Plaintiffs reside in or own homes in the City of Dos Palos, California, near a bulk fuel storage and distribution facility owned and operated by Defendants.  (FAC at ¶¶ 3-4.)  It is alleged that petroleum hydrocarbons leaked from underground and aboveground storage tanks and supply lines at the storage facility and migrated into and contaminated the soil and groundwater on Plaintiffs' property.  (FAC at ¶¶ 6-7.)

The FAC alleges causes of action for (1) negligence, (2) private nuisance, (3) trespass, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, (6) unlawful business practice, in violation of California Business and Professions Code §§ 17200 et seq., and (7) declaratory relief and equitable indemnity.  The original complaint was filed in the Superior Court for the County of Merced, but was successfully removed under Section 1503 of the Energy Policy Act of 2005, 119 Stat. 594, 1076 (2005) (allowing for removal of legal actions involving actual or threatened contamination by methyl tertiary butyl ether ("MTBE")).

2

On January 30, 2008, Plaintiffs' motion to remand was denied, and Defendant's motion to dismiss and/or strike Plaintiffs' First Amended Complaint was denied in part and granted in part.  (Doc. 30.)  The court found that Plaintiffs' claims were barred by the statute of limitations, but granted leave to amend.  (*Id*. at 15-29.)  The fraud/concealment claim was dismissed because it did not state a claim upon which relief could be granted.  The motion to dismiss the intentional infliction of emotional distress, negligent infliction of emotional distress, and declaratory relief/equitable indemnity claims was denied.  (*Id*. at 29-43, 48-49.)  The court addressed the unfair business practice claim:

> Defendant moves to dismiss the Seventh Cause of Action because the Amended Complaint does not allege that Defendant "is in violation of any permit requirement governing its operations, that Defendant is in violation of any Regional Water Quality Control Board order, or that Defendant is in violation of any law whatsoever." Defendants assert that, because Plaintiffs cannot plead a material violation of law, they premise the Seventh Cause of Action on a failure to warn theory, and:

>> This assertion is rather amazing because Plaintiffs cannot deny that they were apprised of, and warned about, site conditions by the Regional Water Quality Control Board and the Defendant. Considering that the Regional Water Quality Control Board and the Merced County Department of Public Health were aware of the existence of the discovery in 1988, of all of the material conditions plead in the Complaint, and of the current status of Defendant's operations, the

3

Complaint's silence speaks volumes.

Plaintiffs respond that Defendant's contention that no violations of law are alleged is belied by the allegations in the Amended Complaint.

The only laws alleged to have been violated by Defendants are Proposition 65 and Business & Professions Code § 17200. At the hearing, Plaintiffs conceded that they cannot bring a private right of action for violation of Proposition 65 because they have not complied with the requirements in California Health & Safety Code § 25249.7(d)(1).

This concession precludes Plaintiffs' reliance on the Unfair Competition Law to state a claim against Defendants under either the Seventh or the Eighth Causes of Action. *See In re Vaccine Cases*, 134 Cal.App.4th 438, 457-459 (2005)("Proposition 65 conditioned a private right of action for violation of the [Safe Drinking Water and Toxic Enforcement Act of 1986, Health & Safety Code §§ 25249.5 et seq.] on compliance with these substantive provisions. To allow plaintiffs to bring a UCL action against ... defendants without complying with section 25249.7, subdivision (d)(1), would frustrate the purpose of this requirement and would nullify its enactment.")

Defendants further move to dismiss the Seventh Cause of Action to the extent that the Seventh Cause of Action seeks restitution as a remedy. Defendant cites *State v. Altus Finance, S.A.*, 36 Cal.4th 1284, 1304 (2005): "A UCL claim for restitution seeks to compel 'defendant[s] to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.' ...." Defendants note that Plaintiffs have not alleged that Defendant ever obtained Plaintiffs' money or that Plaintiffs ever had an ownership interest in any of the defendants' profits.

At the hearing, Plaintiffs explained that their theory underlying the Seventh Cause of Action is that

4

Defendant operated at a competitive advantage over other oil companies, which resulted in a greater profit to Defendant. Defendant complained that Plaintiffs cite no case to support their theory.

In *Kraus v. Trinity Management Services, Inc.*, 23 Cal.4th 116, 127 (2000), the California Supreme Court commented:

An order that a defendant disgorge money obtained through an unfair business practice may include a restitutionary element, but is not so limited ... [S]uch orders may compel a defendant to surrender all money obtained through an unfair business practice even though not all is to be restored to the persons from whom it was obtained or those claiming under those persons. It has also been used to refer to surrender of all profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice.

Kraus provides arguable authority supporting Plaintiff's theory of restitution. Because the Seventh Cause of Action does not allege facts that state a Section 17200 claim, dismissal of the Seventh Cause of Action is GRANTED WITH LEAVE TO AMEND.

(*Id.* at 43-48.)

Plaintiffs filed a second amended complaint on March 12, 2008.  (Doc. 35.)  Defendant again moved to dismiss.  (Doc. 37 & 40, filed Apr. 2, 2008.)  The motion was granted in part and denied in part.  (Doc. 45, filed May 28, 2008.)  The renewed motion to dismiss on statute of limitations grounds was granted with leave to amend (*id.* 9-30), as was the renewed motion to dismiss the fraud/concealment claim (*id.* at 30-36).  As to

Defendant's renewed motion to dismiss the unfair business

practices claim:

> Defendants move to dismiss this cause of action
> because the SAC does not specify whether Defendants
> have engaged in an unlawful, unfair or fraudulent
> business practice. Defendants contend that the
> allegations in Paragraph 72 that "Defendants' actions
> violated state law; said violations resulted in an
> illegal competitive advantage for Defendants, in that
> 'Defendants' and each of them operated their facility
> with knowledge that said facility was leaking petroleum
> hydrocarbons into the soil and groundwater surrounding
> the facility" are conclusory because the SAC fails to
> specify what law was violated. Defendants assert that
> the allegations in Paragraph 72 "is far too ambiguous
> to state a claim." Defendants also contend that the
> allegations in Paragraph 71 that Defendants failed to
> notify surrounding residents of the potential danger,
> characterized by Defendants as "fraudulent
> concealment", see discussion infra, cannot proceed:

> > To allege concealment in the face of their own
> > allegations and judicially noticeable
> > documentation that multiple governmental agencies
> > were informed of the very actions that Plaintiffs
> > claim were concealed is inconsistent with the
> > standards for Federal pleading and this allegation
> > should also be stricken.

> Plaintiffs note that Section 17200 defines "unfair
> competition" to include "any unlawful, unfair or
> fraudulent business act or practice ...." Plaintiffs
> cite *People v. E.W.A.P. Inc.*, 106 Cal. App.3d 315,
> 318-319 (1980):

> > Since the addition of the word 'unlawful' ...,
> > this section has been liberally construed so as
> > not to be limited to traditional anticompetitive
> > practices ... Our Supreme Court has stated that
> > the purpose of the amendment was to 'extend the
> > meaning of unfair competition to anything that can
> > properly be called a business practice and that at
> > the same time is forbidden by law.'

6

Plaintiffs also cite *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838-839 (1994):

> The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made ... It is not necessary that the predicate law provide for private civil enforcement ... As our Supreme Court put it, section 17200 'borrows' violations of other laws and treats them as unlawful business practices independently actionable under section 19722 et seq. ... 'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing members of the public '"are likely to be deceived."' ....

Plaintiffs argue that "[w]hether a business act or practice constitutes unfair competition within Section 17200 is a question of fact." *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1117 (C.D.Cal.2001), *citing Payne v. United California Bank*, 23 Cal.App.3d 850, 856 (1972).

Relying on these cases, Plaintiffs argue that the SAC alleges that Defendants have violated state law, resulting in an illegal competitive advantage for Defendants and that Defendants concealed the fact that they were responsible for the leakage into Plaintiffs' groundwater and failed to warn Plaintiffs of that tortious, harmful conduct. Plaintiffs contend that these allegations, when liberally construed, suffice to state a claim for violation of Section 17200. At the hearing, Plaintiffs represented that Defendant is not complying with the remediation order issued by the California Regional Water Quality Control Board and seeks leave to amend to include this allegation.

(*Id.* at 36-42.)  The motion to dismiss was granted on this ground, but Plaintiffs were afforded another opportunity to amend their complaint in light of their assertion that Defendant is not

complying with the Abatement Order issued by the Regional Water
Quality Control Board.  (*Id*. at 41-42.)

        Plaintiffs filed the currently operative FAC on August 11,
2008.  (Doc. 54.)

### III.   STANDARD OF DECISION

        Federal Rule of Civil Procedure 12(b)(6) provides that a
motion to dismiss may be made if the plaintiff fails "to state a
claim upon which relief can be granted."  The question before the
court is not whether the plaintiff will ultimately prevail,
rather, it is whether the plaintiff could prove any set of facts
in support of his claim that would entitle him to relief.  *See
Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  "A complaint
should not be dismissed unless it appears beyond doubt that
plaintiff can prove no set of facts in support of his claim which
would entitle him to relief."  *Van Buskirk v. CNN, Inc.*, 284 F.3d
977, 980 (9th Cir. 2002).

        In deciding whether to grant a motion to dismiss, the court
"accept[s] all factual allegations of the complaint as true and
draw[s] all reasonable inferences" in the light most favorable to
the nonmoving party.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th
Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983
(9th Cir. 2002).  A court is not "required to accept as true

**8**

allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.   DISCUSSION

### A.   Evidentiary Issues.

Defendant urges the district court to consider a complete copy of the Regional Water Board's June 23, 2006 Cleanup and Abatement Order concerning the Nicoletti Oil storage facility (Doc. 55-3), which is referenced in the complaint (Doc. 54 at ¶171.)  When a document is referenced in a complaint, the document is central to the claim alleged, and if its authenticity is not reasonably challenged, it may be considered by the district court in the context of a motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  Defendant's request is GRANTED.  There is no need to rule on Defendant's alternative request for judicial notice.

### B.   Motion to Dismiss the Unfair Business Practice Claim (Sixth Cause of Action).

Plaintiffs' Sixth Cause of Action for Unfair Business Practice in Violation of Business & Profession Code §§ 17200 et.

9

seq. alleges:

166. Plaintiffs and each of them re-allege and incorporate herein by reference as if set forth herein verbatim the allegations contained in paragraphs 1 through 165.

167. California Business & Professional Code §17200 et. seq. provide that "unfair competition shall mean and include any unlawful, unfair, and fraudulent business practice.

168. "Defendants," and each of them, did engage in and continue to engage in the practice of intentionally, willfully and wantonly operating their bulk fuel storage facility despite knowing as early as 1988 or before that there was ongoing leakage at said facility and that said leak was substantial enough to cause large amounts of highly toxic chemicals to leak into the soil and subadjacent groundwater. "Defendants" and each of them persisted and continue to persist in this practice to the present time.

169. California case law has held that an "unlawful business practice" under California Business and Professions Code §17200 can be any practice forbidden by law, including violation of a regulation, administrative order or other decision from a governmental entity.

170. On or about June 23, 2006, Nicoletti Oil, Exxon Mobil and their agents, successors and assignees were ordered to clean up the waste and abate forthwith the existing and threatened effects of waste discharged to ground water from its facility. In its 13 page Abatement Order, the Water Quality Control Board ordered, among other things, that Defendants maintain, operate and modify the remediation systems to capture, cleanup the pollutants, and prevent the further migration of pollutants from the site, and to provide continuing capture of vapors from the contaminant plume. Defendants were also ordered to submit quarterly ground water monitoring reports, including remediation system operating and monitoring reports by the 15th day of the second month, following the end of each calendar

quarter.

**171. Defendants, and each of them, violated California Business and Professions Code §17200 by violating the cleanup and abatement order number R5-2006-0057, as described above, issued by the Regional Water Quality Control Board, by refusing and failing to comply with that order. Nicoletti failed to comply with that order and has undermined the efforts of the Board and Exxon Mobil to effectuate remediation by repeatedly refusing the efforts of Exxon Mobil and the Regional Board to obtain a more thorough audit of its fuel systems; by failing to maintain the integrity of Nicoletti's operations; and, by actively releasing new contamination at an active remediation site. In a communication to the Water Quality Control Board on March 25, 2008, Exxon Mobil expressed the opinion and concern that other releases have occurred and/or maybe on ongoing at this site, and that future releases are all but inevitable if Nicoletti is not forced to conduct a thorough system audit immediately.**

172. Plaintiffs and each of them have suffered and continue to suffer irreparable harm from exposure to dangerous petroleum hydrocarbons.

173. An action for restitution and disgorgement under the Unfair Competition Act is specifically authorized by Business & Professional Code §17203. Moreover, attorney's fees are authorized under Business & Professions Code 17200 et. seq.

(Doc. 54 at ¶¶ 166-173 (emphasis added).)

Plaintiffs' allegation, in essence, is that Defendant

committed an unlawful act by violating the Abatement Order by

"undermin[ing] the efforts of the Board and Exxon Mobil to

effectuate remediation by repeatedly refusing the efforts of

Exxon Mobil and the Regional Board to obtain a more thorough

audit of its fuel systems; by failing to maintain the integrity

11

of Nicoletti's operations; and, by actively releasing new contamination at an active remediation site."   (*Id*. at ¶172.)

Defendant moves to dismiss on the ground that the FAC contains an "insurmountable pleading defect" in that the Abatement Order does not contain any of the "requirements" that Nicoletti purportedly violated. (Doc. 61 at 1.)  "The court need not ... accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)*, citing Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), amended on other grounds; *see also U.S. ex rel. Riley v. St. Luke's Episcopal*, 355 F.3d 370, 377 (5th Cir. 2004); *Thompson v. Illinois Dept of Prof. Reg.*, 300 F.3d 750, 754 (7th Cir. 2002).   There is no reason to believe this rule would not extend to documents incorporated by reference in the complaint.

The Abatement Order begins with a lengthy background section containing factual findings (¶¶ 1-21), followed by a section entitled "Authority -- Legal Requirements," which reviews various provisions of the California Water Code pertaining to discharges into the waters of the State (¶¶ 22-26), State Water Resources Control Board Policies and Procedures regarding the investigation and cleanup of contaminated sites (¶¶ 27-28), as well as the 1998 Water Quality Control Plan for the Sacramento River and San

Joaquin River Basins, which designates the beneficial uses of the waters of the State, and establishes water quality objectives along with policies to implement those objectives (¶¶ 29-31). The Abatement Order then indicates which constituents were found on the Nicoletti site.  (¶¶ 32-33.)  The next section, entitled "Discharger Liability," explains the legal basis for the remediation requirements described in the subsequent section. (¶¶ 37-39.)  The final section, "Required Actions,"[1] is divided into several sub-sections.  The first, "Remediation," orders Defendant to continue operating various remediation systems (RA ¶1) so as to "capture, cleanup the pollutants, and prevent the further migration of pollutants from the Site, and to provide continuous capture of the vapors from the contaminant plume" (RA ¶2), until the Water Board approves cessation of operations (RA ¶3).  The sub-section on "Groundwater Monitoring" requires the submission of quarterly operation and monitoring reports.  (RA ¶¶ 4-5.)  The next sub-section, entitled "Human Health Risk/Public Participation," requires Defendant to continue an existing advisory against the consumption of homegrown produce by nearby residents.  (RA ¶6.)  The final sub-section, entitled "General Requirements," contains generic requirements such as "conduct

_____

[1]     The paragraph numbering is restarted in this section. Hence, all references within the "Required Actions," section are referenced as "RA" followed by a paragraph number.

work only after Water Board staff concurs with work plans." (RA ¶7.)

The Abatement Order contains no findings of or prohibitions against any of the failures Plaintiffs allege here, namely that Defendant violated the Abatement Order by "repeatedly refusing the efforts of Exxon Mobil and the Regional Board to obtain a more thorough audit of its fuel systems; [] failing to maintain the integrity of Nicoletti's operations; [and] actively releasing new contamination at an active remediation site."

Plaintiffs do not even attempt to directly address the disconnect between their allegations and the prohibitions contained in the Abatement Order. Instead, Plaintiffs argue that Defendant's argument "flies in the fac[e] of the express wording of the instant [Abatement Order] which fin[d]s Nicoletti to have discharged harmful toxic waste into the ground water and [orders Nicoletti] to cleanup the waste and abate the hazard 'forthwith.'" Although Plaintiffs do not cite any specific paragraph from the Abatement Order, it appears they refer to the introductory paragraph to the "Required Actions" section, which provides:

> IT IS HEREBY ORDERED that ... Nicoletti Oil, Inc and ExxonMobil Corporation, their agents, successors, and assigns, shall clean up the waste and abate <u>forthwith</u> the existing and threatened effects of waste discharged to groundwater from the facility.... "Forthwith" means

14

as soon as reasonably possible, but in any event no
later than the compliance dates below.

(Abatement Order at 10.)   The Abatement Order then continues
"[m]ore specifically," to define the specific tasks required of
Defendant, as reviewed above.   (*Id.*)

Plaintiffs citation to this passage does not save their
claim.   It is generic language requiring Defendant to abate, as
soon as reasonably possible, "the existing and threatened effects
of waste discharged to groundwater from the facility."   No
mention is made of any requirement that Nicoletti adopt or allow
"a more thorough audit of its fuel systems"; that Nicoletti
"maintain the integrity of [its] operations"; or that Nicoletti
avoid "actively releasing new contamination at an [its]
remediation site."

Plaintiffs also argue that the Abatement Order "shows a
violation of California Health and Safety Code Sections 25249.5 -
25249.13 (Proposition 65)."   This argument was rejected by the
January 30, 2008 memorandum decision, because "Plaintiffs
conceded that they cannot bring a private right of action for
violation of Proposition 65 because they have not complied with
the requirements in California Health & Safety Code §
25249.7(d)(1)."   (Doc. 30 at 46)   Plaintiffs have not moved for
reconsideration of that ruling, nor do they present any basis for

15

1    reconsideration.

2        The allegations contained in Plaintiffs' unfair business
3    competition claim are contradicted by the contents of the
4    
5    Abatement Order, which was relied upon in the complaint.
6    Defendant's motion to dismiss on this ground is GRANTED.

7        At oral argument, Plaintiffs once again shifted course,
8    arguing that their unfair competition claim should survive
9    
10   because it is based upon on "unfair" actions by Defendants,
11   rather than on any unlawful act.  Plaintiffs cite a case they
12   "just discovered," *State Farm Fire & Casualty Co. v. Superior*
13   *Court*, 45 Cal. App. 4th 1093 (1996), for the general proposition
14   
15   that section 17200 prohibits "unfair ... business act[s] or
16   practice[s]."

17              This standard is intentionally broad, thus allowing
                courts maximum discretion to prohibit new schemes to
18              defraud. The test of whether a business practice is
19              unfair involves an examination of that practice's
                impact on its alleged victim, balanced against the
20              reasons, justifications and motives of the alleged
                wrongdoer. In brief, the court must weigh the utility
21              of the defendant's conduct against the gravity of the
22              harm to the alleged victim.

23   *Id.* at 1103-04 (internal citations and quotations omitted).

24       Because the unfair competition claim as presently alleged is
25   not premised on this legal authority, Plaintiffs' argument will
26   
27   be construed as a motion for leave to amend.  Plaintiffs have had
28   several opportunities to allege a claim based upon the "unfair"

                                16

prong of § 17200.  Their failure to articulate such a claim in any of the previously-filed complaints counsels against again granting them leave to amend.  Instead, if discovery establishes a basis for such a claim, Plaintiffs may move for leave to amend at a later date.

**V.   CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss the Sixth Cause of Action is GRANTED.  The claim may not be reasserted until discovery establishes a basis for a section 17200 claim consistent with the requirements of Rule 11.

**IT IS SO ORDERED.**

**Dated:    November 10, 2008            /s/ Oliver W. Wanger         **
**UNITED STATES DISTRICT JUDGE**

17